## 9095

### STATE v. JONES.

(85 S. E. 239.)

CRIMINAL LAW.    HOMICIDE.    ACCIDENT.    CHARGE.

1. CHARGE.—It is sufficient if requested instructions applicable to a case are substantially given by the Judge in his own language.
2. CHARGE.—Where the evidence does not tend to disclose facts to which a requested instruction would be applicable, it may be refused.
3. CRIMINAL LAW—HOMICIDE—ACCIDENT.—Where the testimony shows that a defendant voluntarily intending to hurt the person of another, struck a dangerous blow which was likely to result in serious harm, and death resulted therefrom, it is not an accidental killing.
4. CRIMINAL LAW—HOMICIDE—CHARGE.—Where there was no evidence from which a jury could infer that a homicide was accidental, it was not error to charge "that where a man engaged in the commission of an unlawful act kills another the law calls that manslaughter, even though he may not have intended to kill another."
5. (MR. JUSTICE HYDRICK, *dissenting.* Thinks testimony warranted an inference that the homicide was accidental.)

Before MEMMINGER, J., Marlboro, March, 1914.    Affirmed.

Jesse Jones, being indicted for murder, and convicted of manslaughter, appeals.    The facts are stated in the opinions.

The charge of the trial Judge was as follows:

Mr. Foreman and Gentlemen of the Jury: Under this indictment, gentlemen, and the statement of the solicitor that he asks only for a verdict of manslaughter, you will write either guilty of manslaughter, the punishment for which will be from two to thirty years, or you will write not guilty.    Now, as to which of those verdicts you will write will depend on how you decide the question as to whether or not the State has made out to your satisfaction beyond any reasonable doubt that this man is guilty of manslaughter; or whether this defendant has shown by the greater weight of the evidence, or has raised a reasonable doubt in your mind as to whether he has proved self-defense

or not. Now, if the evidence, gentlemen, satisfies you by the greater weight that this defendant acted in self-defense, or if you have a reasonable doubt as to whether he acted in self-defense or not, you will acquit him. So the question for you is what is the law as to self-defense? Well, where one kills another in defense of himself from loss of life or from sustaining serious bodily harm, he is excused in the law, for the killing is wholly without blame. But the limitation upon killing in self-defense is this: that, first, he must be free from fault in bringing on the difficulty. You weigh that question. You say, was the defendant, who here asks to be excused on the ground of having killed in self-defense, was he free from fault in bringing on the difficulty. Unless he was free from fault in bringing on the difficulty he has failed in that particular to make out self-defense, and you would not proceed any further with the consideration of it, because having failed on that first requirement, the excuse would no longer be available to him. But if you decide that he was not at fault in bringing on the difficulty, then you go the next step and see whether or not he measures up to the next requirement that the law places upon the right of claiming to be excused on the ground of having killed in self-defense, and that is, could he have retreated from the difficulty, without endangering, without probably endangering, his safety. Because the law requires a man to retreat, unless by retreating he would probably endanger his safety. It requires him to avail himself of all probable means of escape. If he has not measured up to that requirement, then he would have failed there, and, of course, it would not be necessary to proceed further. But if he has measured up to that requirement, and has shown that he could not have retreated without endangering his safety, then you go the last step and see whether he has measured up to that, and that is whether it was necessary for him then and there to take the life of his adversary, whether or not the danger was such, either real

or apparent, as would justify the belief in his mind that he was really in danger of loss of his life, or of serious bodily harm. That is, was there a necessity then and there upon him to go to the extent of taking the life of the man in order to save himself from loss of life or from serious bodily harm. Now, he has the right to judge of that necessity, gentlemen, by the appearances. If you are satisfied that he did believe from the appearance that he was in danger of the loss of his life or of serious bodily harm, then you would have to say, even if it was so, that he was so satisfied that he was in danger of loss of life or of serious bodily harm, would that belief have been justified in the mind of a man of reasonable prudence, firmness and courage, placed as he was, because that is the standard by which you have to judge and measure it. Now, if you are satisfied that the appearances there were such as would justify the belief in the mind of a man of ordinary prudence and firmness and courage, placed as that man was, that he was in danger of loss of life, or of serious bodily harm, then you would have to hold that the necessity did exist under the law, and he would have measured up to that requirement, and if he, having measured up to all those requirements, you would have to acquit him on the ground of self-defense; otherwise not. The limitation being that he who is excused on the ground of self-defense must be free from fault in bringing on the difficulty, must retreat unless by retreating he would probably endanger his safety, and that there must have been the necessity both in his mind, and such as would have existed in the mind of a man of ordinary firmness and prudence and courage, placed as he was, to go to the extent of taking the life of his assailant. If the greater weight of the evidence goes to prove that, or to raise a reasonable doubt in your minds as to his guilt, of course, if you decide he is entitled to be acquitted on that ground, write a verdict of not guilty. If not, decide whether or not the State has made out to your satisfaction

beyond a reasonable doubt the crime of manslaughter. Manslaughter is the killing of a human being without malice, either expressed or implied, as a killing in sudden heat and passion upon sufficient legal provocation. Where two men get into a fight, and one strikes another, and as a result of that, acting under the provocation engendered by the blow, the man strikes and kills the other, then the law reduces the killing and makes it manslaughter, it is done in sudden heat and passion; it is an unlawful killing, without malice, expressed or implied. As where a man engaged in the commission of an unlawful act kills another, the law calls that manslaughter, even although he may not have intended to kill another. That is what is known as involuntary manslaughter. So the law says where two men agree to go and have a fight—that is, to violate the law, to do an unlawful act, and as a result of that fight one of them kills the other, even although he did not intend to kill him, in the fight strikes a blow he did not intend to be a death blow, but nevertheless became a death blow, and was a blow resulting from the commission of an unlawful act, then the law makes that a case of manslaughter, an unlawful killing of a human being, but done without malice, expressed or implied.

Now, those are the general principles of law, gentlemen, applicable to this case. Throughout the whole inquiry, as I stated to you, you give the defendant the benefit of every reasonable doubt upon any material element. That means, as the law says, a doubt arising out of the evidence, a doubt for which you can give a reason. If you decide that the defendant has been proven guilty beyond a reasonable doubt of manslaughter, write guilty of manslaughter, and the foreman will sign the verdict as foreman. If you decide that he is not guilty of manslaughter under the evidence and the rules of law I have stated to you, write not guilty. So take the indictment and decide the case.

The following requests to charge presented by defendant, were refused by the Court:

1. I charge you that, so jealous is the law in regard to the liberty and rights of the people charged with crime that they are presumed to be innocent until they are proved to be guilty beyond all reasonable doubt. And if one interposes a plea of self-defense, should the jury, from the consideration of the testimony, entertain a reasonable doubt as to whether or not that plea has been established by the greater weight of the evidence, then the defendant is entitled to·an acquittal.

2. The rule has been established in this State that where self-defense is pleaded to an indictment, the defendant must establish it by the preponderance of the evidence, but at the same time the guilt of the accused must be made to appear beyond a reasonable doubt before he can be convicted.

3. On a plea of not guilty the defendant is entitled to an acquittal, unless the jury, after a consideration of every material fact and circumstance in the case, are satisfied of his guilt beyond all reasonable doubt.

4. On a plea of not guilty the defendant is entitled to set up any defense which he may have—that is, as many defenses as he may have. And I charge you that the plea of accidental killing is not an affirmative defense, and, therefore, does not impose any burden of proof upon the defendant, and when such plea is made the State cannot ask for a conviction unless it proves that the killing was done with criminal intent. And unless the jury are satisfied of the guilt of the accused beyond all reasonable doubt, they must acquit him.

The defendant appeals on the following exceptions:

(1) Because the presiding Judge erred in refusing to charge the law of accidental killing as set forth in defendant's fourth request to charge, it being submitted that the said request contained good law and the refusal of the pre-

siding Judge to charge same was prejudicial to the rights of the defendant.

(2) Because the presiding Judge erred in refusing to charge the law of accidental killing.

(3) Because the presiding Judge erred in refusing to charge the first, second and third request of the defendant, relating to the law of self-defense, it being submitted that said requests contained sound propositions of law, directly relating to, and material to, the case; and the refusal of the Judge to so charge deprived the defendant of the whole law of self-defense, and was, therefore, prejudicial to his rights.

(4) The testimony conclusively showed that the defendant was not the aggressor, and did not in anyway bring on the difficulty, and that as soon as he learned that the deceased was in earnest about doing him an injury, he immediately made all reasonable effort to escape, and was prevented from getting away by deceased; and the testimony of the defendant, the weapon used, and the position, and condition of wound, conclusively showed that the defendant did not strike until he was forced to do so to save himself, and that he did not intend to kill, but only to save himself, and he was, therefore, entitled to a charge covering the whole law of self-defense and accidental killing; and his Honor erred in·refusing to charge the requests submitted, and such error was prejudicial to the rights of the defendant.

(5) There was some testimony tending to show accidental killing, and the refusal of the presiding Judge to charge the law of accidental killing, when specifically requested to do so, removed from the jury the power to consider any testimony relating to accidental killing, and deprived the defendant of a material defense to which he was entitled.

(6) The testimony showed that the defendant ·did not seek the difficulty or bring it on; that it occurred after dark; that defendant knew nothing of any ill will entertained against him by deceased; that deceased armed himself with a pair of wire pliers, but that defendant did not know he

was armed until it was too late to escape; that the pliers were drawn by deceased from his hip pocket, and that defendant thought same was a pistol; that it was apparently dangerous for him to attempt to escape; that defendant had caught hold of a porch post to keep from being thrown to the ground and slain by deceased; that defendant was not armed until he obtained the porch post which he had pulled from the house when jerked to the ground by deceased; that deceased was a dangerous man when drinking, and was much heavier than the defendant; that deceased when struck was trying to carry into effect his threats made against defendant; that it was apparently necessary for defendant to strike when he did in order to save his life or to save. himself from serious bodily harm; that in striking he did not intend to kill, but merely to protect himself; and in view of all the testimony it was prejudicial to the rights of the defendant for the presiding Judge to fail to charge the whole law of self-defense and to refuse to charge the law of accidental killing, when requested to do so.

(7) There was testimony tending to prove accidental killing, and when the defendant made specific request to charge the law of accidental killing, and such request was refused, such refusal had the effect of a direct instruction to the jury; that there was no testimony, in the opinion of the Court, from which the jury could infer accidental killing, and to that extent was in violation of section 26, article V of the Constitution of 1895 of South Carolina, wherein Judges are prohibited from charging juries in respect to matter of fact, and deprived the defendant of the right of having the jury pass upon all the testimony in the case, from which the jury might have inferred accidental killing.

(8) Because his Honor erred in refusing defendant's motion for a new trial, made upon the grounds set out in this case on appeal; it being submitted that there was testimony tending to show accidental killing, and his Honor was at the proper time specifically requested to charge the law

of accidental killing; and when he refused to do so, such refusal was prejudicial to defendant's rights and may have caused the jury to render a different verdict from that which they would have rendered had accidental killing been charged.

(9) Because his Honor erred in charging the law of mutual combat and in refusing a new trial for defendant when made upon the grounds set forth in this case; it being submitted that there is no testimony tending to show mutual combat, and when his Honor charged the law of mutual combat and refused to charge the law of accidental killing, when the latter was requested, his Honor brought to the attention of the jury the fact that in his view of the case there was testimony tending to show mutual combat, but no testimony tending to show accidental killing, and thus deprived the jury of the right to pass upon the facts tending to show accidental killing and forced upon their attention the law of mutual combat; all of which was prejudicial to the rights of the defendant, and may have caused the jury to render a different verdict than they otherwise would have done.

*Mr. J. W. LeGrand,* for appellant, cites: 24 S. C. 244; 85 S. C. 394; 86 S. C. 418.

*Mr. Assistant Attorney General Dominick* and *Mr. Solicitor J. Monroe Spears,* for respondent.

May 5, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The defendant was indicted for murder and convicted of manslaughter at the March term of the Court, 1914, for Marlboro county, and sentenced by his Honor, Judge Memminger, at hard labor for the period of three years, a motion for a new trial having been overruled. Defendant appeals and alleges error on the part of the Judge in not charging

the jury as to the law of self-defense, as embodied in defendant's request to charge, and in refusing to charge defendant's request to charge as to accidental killing. Defendant complains of further error in Judge's charge as to the law of mutual combat.

We have read the Judge's charge as a whole and find that he covered every phase of the law of the case fully. In his own language he told the jury what was murder, manslaughter, and self-defense. His charge was fair and impartial, and the jury could not have misunderstood it, and it was in nowise prejudicial to the defendant. He fully told them, in his own language, what the law of self-defense was. A Judge is not bound to charge in the exact language of a request made; it is sufficient if he does so substantially in his own language. Even though the request embodies a sound proposition of law applicable to the case as to the defendant request as to the law of accidental killing, there were no facts disclosed in evidence to warrant an inference that it was accidental. The defendant and deceased got into an altercation and then in a fight, which resulted in the death of the deceased from a blow inflicted by the defendant. The defendant testified in his own behalf as to how the difficulty began, and as to how the fight commenced, claiming that the deceased was the aggressor from the beginning and assaulted him, the defendant. "That he grabbed me in the back and struck me in the back and I grabbed around the post to hold away from him, and got into the house and got rid of him, and he jerked me back, and I had the post, and that post pulled out, and me and him both fell, and I fell backwards and the post was on top of me. And when me and him got off of the ground he was pulling something out of his pocket. I did not know what it was, and I said: 'Josh, don't you shoot me;' and he said, 'You son of a bitch, I will get you tonight,' and I saw something coming out of his pocket, and I took the post

and I jooged him that way.  I did not intend to hurt him badly, but I jooged to get rid of him.  If I could have jooged him enough so I could have run, I would have.  I knew he was a good man.  He was the best man; always was."  This does not show an accidental killing.  The defendant voluntarily and knowingly intended to hurt the person of the 'deceased, even though if he did not intend to kill him, yet if death ensued, and he unlawfully struck, he is guilty of murder or manslaughter, according to the circumstances of the nature of the instrument used and the manner of using it as calculated to produce death or great bodily harm or not.  If the facts and circumstances show either that it was done with mischievous intent, or that it is a dangerous act and will result in serious harm, or there is a strong probability that it will, it cannot be an accidental killing.  The textbooks show this to be law and quotation of authority is unnecessary.

In light of all the facts and circumstances and surroundings.developed in the case there was no evidence from which the jury could infer that the killing was an accident. It was either felonious or excusable on the ground of self-defense.  His Honor was correct in telling the jury that "where a man engaged in the commission of an unlawful act kills another the law calls that manslaughter, even though he may not have intended to kill another."

We fail to see that there is any error in the trial in the Circuit Court as made by the exceptions, and all exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES FRASER and GAGE concur in the opinion of the Court.

MR. JUSTICE HYDRICK, *dissenting.*  I think the evidence warranted an inference that the killing was unintentional and accidental; and, therefore, the trial Judge erred in refusing to instruct the jury, as requested,

"that the plea of accidental killing is not an affirmative defense, and, therefore, does not impose any burden of proof upon the defendant; and when such plea is made the State cannot ask for a conviction, unless it proves that the killing was done with criminal intent." The refusal of the requested instruction, followed by the charge as to some phases of accidental killing, was clearly prejudicial. Upon that phase of the case the Court did instruct the jury as follows: "As where a man engaged in the commission of an unlawful act kills another, the law calls that manslaughter, even although he may not have intended to kill another. That is what is known as involuntary manslaughter. So the law says where two men agree to go and have a fight—that is, to violate the law, to do an unlawful act, and as a result of that fight one of them kills the other, even although he did not intend to kill him, in the fight strikes a blow he did not intend to be a death blow, but nevertheless became a death blow, and was a blow resulting from the commission of an unlawful act, then the law makes that a case of manslaughter, an unlawful killing of a human being, but done without malice, expressed or implied." From the foregoing instruction, following the refusal of that prayer for, the jury may have inferred that the burden of proof as to the plea of accidental killing was upon defendant, as they were told it was as to the plea of self-defense.

If there was any evidence which warranted a reasonable inference that the killing was unintentional and accidental, the refusal of the requested instruction was error. *State v. Morgan,* 40 S. C. 345, 18 S. E. 937; *State v. Lee,* 58 S. C. 335, 36 S. E. 706; *State v. McDaniel,* 68 S. C. 304, 47 S. E. 384; *State v. Ferguson,* 91 S. C. 235, 74 S. E. 502.

The undisputed evidence showed that defendant and deceased were brothers; that, on the day of the fatal encounter, deceased and his father went together in a buggy to the house of Lizzie Little, where defendant was, to see

him on business; that when they got there, defendant was eating supper, and, being invited, deceased ate with him; that they were perfectly friendly and chatted in a friendly way during the meal and afterwards, until deceased took offense and became greatly and unreasonably enraged at a most trivial remark made by defendant; that deceased was drinking, and, when in liquor, he was quick to take offense, quarrelsome and dangerous; that he was the older, stronger and better man of the two; that he threatened to whip defendant, and attempted to do so with a buggy whip, but was prevented by his father. The evidence warranted the inference that deceased was the aggressor throughout, and persisted, against the entreaties of his father, in trying to bring on an encounter which defendant tried to avoid; that, in trying to avoid the difficulty, defendant left deceased and his father at their buggy, to which they had gone preparatory to leaving, and was going back to the house when deceased followed him and overtook him near the porch, and caught hold of him from behind; that defendant caught hold of the porch post—said to have been a scantling—to keep deceased from pulling him down, and the post gave way and both fell backwards; that, when they got up, deceased drew something out of his hip pocket, which defendant thought was a pistol, it being nearly dark, but it turned out to be a pair of wire cutters; that defendant said to deceased: "Don't shoot me," and deceased replied: "You son of a bitch, I will get you tonight." Defendant testified: "I saw something coming out of his pocket, and I took the post, and I jooged him that way. I did not intend to hurt him badly, but I jooged him to get rid of him. If I could have jooged him enough so I could have run, I would have." The evidence was that the blow did not break the skin on deceased's head, and that he lived sometime after the blow, and talked to his father on their way home, but it is not stated how long he lived. The father testified that after the difficulty defendant said to deceased: "If you had

not went to shoot me, I would not have knocked you." It should be said that it is also inferable from the evidence that defendant was at the porch and went to meet deceased as he approached him, and so voluntarily entered into the combat.

I think the testimony clearly warranted the inference that the fatal effect of the blow was unintentional and accidental, in the legal sense of the word. . Whether that was the correct inference was, of course, a question for the jury. No doubt the correct rule is that even in self-defense, the means of force employed must not be unreasonably disproportioned to the attack. A slight blow will not justify an enormous battery. But the nature of the weapon used and the kind of blow given with it must be considered in the light of the circumstances of the defendant at the time. He may not have time or opportunity to deliberate upon and select the means of defense, or to make nice calculation to gauge the proper *quantum* of force necessary to repel the assault. Even when we have time for mature deliberation, our actions often result differently from what we intend. Numerous cases are found in the books where a slight blow, or moderate chastisement, resulted in death. Such cases are held to be accidental, when there was no intent to kill, and the instrument employed and the chastisement inflicted not unreasonable under the circumstances. But for the proof that deceased drew the wire cutter out of his hip pocket, which defendant took to be a pistol, it might well be said that the blow struck with the post was unreasonably disproportioned to the assault made upon him. But not so, if he honestly and reasonably believed that he was in imminent danger of being shot, or even struck with the pliers—especially if, as he swore, his intention was not to kill, but merely to stop the assault. While it is true that the use of a deadly weapon raises a presumption of malice, yet it is only a presumption of fact which may be rebutted. In each of the cases above cited from our own decisions, where

the killing was claimed to be accidental, and it was held that the issue either had been or should have been submitted to the jury, under proper instructions, a deadly weapon was used—either a pistol or gun. The fact that a deadly weapon was used, therefore, does not necessarily deprive a defendant of the right to have that issue passed upon by the jury. Of course, if there is no evidence which would warrant a finding of accidental killing, the issue should not be submitted. But here the defendant swore that he did not intend to kill his brother, or even to hurt him badly, but intended to strike him hard enough to stop the assault upon himself. The trial Judge must have thought the evidence warranted a finding of accidental killing of some sort, for, otherwise, he would not have given the instruction upon that subject above quoted, which applies only to such killings in pursuance of an unlawful enterprise, or in mutual combat, which the law does not excuse. While there was evidence which warranted the finding that the combat was mutual, that was not the only view of it, for it equally, if not more than equally, warranted the finding that defendant did everything that he could in reason to avoid the difficulty, and struck only after he had been attacked without any provocation.

Therefore, I think a new trial should be granted.