STATE v. SYMMES.

1. EVIDENCE IN REPLY.—The defendant, charged with murder produced by a pistol shot, having testified that the deceased was within a foot or two of him when he fired, the clothes worn by the deceased at the time may be introduced in reply to show the absence of powder burns, however weak

such testimony may be in the absence of other testimony as to the distance at which clothes would be burned by a discharged pistol. Testimony in reply is largely within the discretion of the trial judge, and his discretion was not abused in this case.

2. CHARGING JURIES—SELF-DEFENCE.—The correctness of a charge to the jury must be determined by a consideration of the charge as a whole; and when so considered in this case, the judge correctly instructed the jury as to that necessity to take life which would excuse a homicide, further instructions having been waived.

Before IZLAR, J., Pickens, March, 1893.

Indictment against Whitner Symmes for the murder of William F. Gary in defendant's office at Central, in Pickens County, on July 12, 1892. So much of the charge to the jury as related to the law of self-defence was as follows:

The defence set up is self-defence. I charge you that a man has a right to defend himself against an attack, but he is not, therefore, justified in killing his assailant. If he is justified, depends on the nature of the assault. A violent defence can only be employed when there is a violent attack. The violence of the assault must justify the taking of life in self-defence. And the burden of proving it rests with the defendant; and he must prove his plea to your satisfaction by the preponderance of the evidence. You weigh the evidence in support of the plea, and you weigh the evidence against the plea, and whichever way the scales turn, that would be the preponderance. So you weigh the evidence, and the defendant must prove it by the preponderance. If he fails to do it, he cannot ask you to take it as a fact proved that the killing was done in self defence.

To justify killing in self-defence, the defendant must have been at the time in real or apparent danger, imminent and immediate, and not a contingent danger. Homicide may be excused on the ground of necessity alone. There must be an imperious necessity to take life to save life, or to prevent serious bodily harm, to excuse a killing in self-defence. A party need not avoid danger by flight, so long as he is where he has a right to be, and is not the provoker or aggressor in bringing on the difficulty; but if the assaulted party is in fault in bringing on the difficulty, he is bound to retreat as far as possible

consistent with safety, without putting himself in danger, unless prevented by the fierceness of the attack. Under these circumstances, if he kills his adversary to save his own life or prevent great bodily harm, it would be excusable homicide. It would be excusable homicide if he did this.

The deceased was fatally shot in the office of the defendant. This was not his dwelling house, but his place of business. As I understand it, it was a public office, where the defendant met those who had business with him. It was, therefore, not so sacred a place as a man's dwelling house, where he and his family reside. If he gained peaceable entrance to the office, although he refused to leave when ordered out, the defendant was not justified in killing him; and if he did so under these circumstances alone, the law will not excuse him. If the deceased intruded himself into the office of the defendant, and would not leave when requested, the defendant was justified in using just such force as was necessary for the purpose. If he used greater force than was necessary, and took the life of the deceased with a deadly weapon, it would be manslaughter, if there was no malice. But if the deceased not only refused to leave the office of the defendant when requested, but assaulted him, and threw him violently against the counter or the iron safe, the defendant had the right to defend himself against such attack, and even to take the life of the deceased, if necessary to protect himself from great bodily harm or from death.

Now, what is necessary to make out a case of self-defence under the law? Our own court has laid down the law on this subject, and I think has given the very best definition to be found in any law book. To make out a case of self-defence, four things are necessary : First, the party must be without fault himself in bringing on the difficulty. In the second place, he must believe at the time that he is in such immediate danger of losing his own life, or of receiving serious bodily harm, as renders it necessary to take the life of his assailant, to save his own life or to prevent serious bodily harm. In the third place, the circumstances must have been such as to have warranted such belief in the mind of a man of ordinary reason and firmness. And fourth, there must have been a necessity to take

25—40

life, and you are to be the judges of the necessity. It is not
what the prisoner at the bar may have thought about it, but he
is to be measured by a man of ordinary reason and firmness;
that is the mode, the measure, and the standard by which his
actions on this occasion are to be judged, and are to be judged
of by you, and you are to answer, "What would a man of ordi-
nary reason and firmness have done on this occasion? And if
such a man would have acted as he did, why, then, a case of
self-defence would be made out, and it would be your duty to
acquit the defendant.

I have already told you that the burden of proving the plea
of self-defence is upon the defendant, and he must prove it to
your satisfaction by the preponderance of the evidence. The
law does not hold him to as strict a rule in making out his plea
as it does the State. The State must satisfy you beyond a rea-
sonable doubt; and if you come to the conclusion that the plea
is not made out, yet when you come to consider the whole case,
and if, upon the whole testimony, that introduced by the State
in support of the charge and that introduced by the defendant
in support of his plea of self-defence, you still have a reasonable
doubt of his guilt, then you should acquit the defendant.

*Messrs. J. P. Casey* and *W. C. Benet*, for appellant.

*Mr. Ansel*, solicitor, contra.

February 21, 1894. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The defendant, Whitner Symmes,
was indicted for the murder of William F. Gary. The trial
was had at the March term of the Court of General Sessions for
Pickens County. There was much testimony *pro* and *con*, which
is all printed in the Brief for reference. The defendant was found
guilty of manslaughter. His counsel moved for a new trial on
the minutes of the court, which being refused, he now appeals
to this court for a new trial on the following exceptions: I.
Because the judge erred in overruling the defendant's objection
to the introduction by the State's solicitor of the shirt and
pants of the deceased in reply, the defence having closed, and
the introduction of said garments not having been offered in

evidence by the State in the opening of the case. II. Because the judge erred in admitting the testimony of the State's witnesses, John A. Gary and J. N. Hopkins, as to the aforesaid garments, over objection that such testimony was not in reply to his defence, and his defence being closed. III. Because the judge erred in admitting the testimony of the State's witnesses, J. J. Lewis and H. A. Richey, in reply as to powder burns, against objection that such testimony was not in reply to his defence, but should have been introduced, if at all, in the opening of the case by the State. IV. Because the judge erred in charging the jury as follows: "Homicide may be excused on the ground of *necessity* alone. There must be an imperious necessity to take life to save life, or to prevent serious bodily harm, to excuse a killing in self-defence." V. Because the judge erred in charging the jury as to the defence of self-defence as follows: "And fourth, there must have been a necessity to take life, and you are to be the judges of the necessity."

Exceptions 1, 2, and 3 allege error on the part of the judge, in that he admitted in evidence the shirt and pants which the deceased wore at the time of the homicide, and the testimony of John A. Gary, J. N. Hopkins, J. J. Lewis, and H. A. Richey in relation thereto, and especially whether the said garments bore any evidence of powder burns, &c.; such testimony having been admitted over the objections of the defendant, that it was after the defence had closed, but not *in reply* to any thing testified to by defendant's witnesses, nor *in reply* to the testimony for the defence. It seems that the rencounter of the parties occurred in the law office of the defendant, when there was no witness present; that the defendant availed himself of the privilege allowed of going upon the stand as a witness, and in his testimony had stated that the deceased was very near him, "within a foot or two," when he fired the first shot. The solicitor offered the aforesaid garments in evidence, claiming that their condition—having no powder burns upon them—would contradict the statement which the defendant had made, and, therefore, the evidence was *in reply.* The testimony was admitted, over objections made, the judge saying to the counsel of the defendant, "If you desire it, I will

allow you to reply." Two of the witnesses testified that they examined the clothes of the deceased the evening after the difficulty, and that they found no powder burns on them; but none of them undertook to say, that they knew of their own knowledge how far a pistol shot would burn clothing. Considering the evidence as offered for the purpose of contradicting the statement made by the defendant, it may be true that, for the purpose indicated—that for contradicting the statement aforesaid—the evidence afforded by the absence of powder burns was very slight indeed, being nothing more than a possible inference from the absence of a particular fact; yet we can not say that it did not conflict in any respect with the aforesaid statement, and to that extent, at least, must be considered as *in reply*.

Besides, "the conduct of a case upon the Circuit, so far as relates to the time of the introduction of testimony on the one side or the other, must be regulated by the particular circumstances then existing, of which the presiding judge can properly alone decide. So far have our courts gone in this regard that, in *Browning* v. *Huff*, 2 Bail., 175, and *Poole* v. *Mitchell*, 1 Hill, 401, it was held that it was altogether in the discretion of the court to permit testimony to be offered by the plaintiff after he had closed his case, and a motion for non-suit had been made and refused," &c. *Matthews* v. *Heyward*, 2 S. C., 247. See *Cantey* v. *Whitaker*, 17 S. C., 527, and *Kairson* v. *Puckhaber*, 14 S. C., 626. It is admitted that in the interest of truth and justice this is the rule in civil cases; but it is suggested that in criminal cases the rule of practice is different. But, as we understand it, the rule in criminal cases is the same, except in certain exceptional cases, none of which are applicable here. In 1 Greenleaf on Evidence, section 65, it is said: "In criminal prosecutions it has been thought that greater strictness of proof was required than in civil cases, and that the defendant might be allowed to take advantage of nicer exceptions. But whatever indulgence the humanity and kindness of judges may have allowed in practice, in favor of life or liberty, the better opinion seems to be, that the rules of evidence in both cases are the same"—citing numerous authorities. See the late case of

*State* v. *Turner*, 36 S. C., 534, as to what proof may be offered in reply; and the case of *State* v. *Merriman*, 34 S. C., 37, in which the [present] Chief Justice said : "The only objection urged to that testimony seems to be that it was irrelevant, and it was certainly not incompetent. The matter of receiving or rejecting irrelevant testimony must necessarily be left largely to the discretion of the Circuit Judge, and we do not think that the Circuit Judge abused his discretion in this instance," &c. And so we say in this case.

Exceptions 4 and 5 complain of the instructions given to the jury, as to what was necessary to maintain the plea of self-defence, and may be considered together. It seems that the judge, among other things, charged as follows : "Homicide may be excused on the ground of necessity alone. There must be an imperious necessity to take life, to save life or to prevent serious bodily harm, to excuse a killing in self-defence." And at another place : "And fourth, there must have been a necessity to take life, and you [the jury] are to be the judges of the necessity." It is earnestly urged that by these instructions, embraced in the exceptions, the judge committed error of law, in requiring too much to make good a plea of self-defence. This same question has recently been before the court in several cases, and we had hoped that it was finally settled. There was no request to charge on the particular point now made. The counsel for the defendant did make some requests, but they were all charged for the defendant as requested. At the close of a full and clear charge, the judge asked if there was any thing else, and was answered in the negative. It will be observed that the exceptions under consideration both contain extracts from the body of the charge—disconnected from the context—and, therefore, the entire charge, or, at least, so much of it as relates to the plea of self-defence, should be set out in the report of the case, in order to show the connection in which the words complained of were used. It has been repeatedly declared by this court that the correctness of a charge must be tested, not by isolated detached paragraphs or sentences, but by considering it as a whole. This being the case, we must read the whole charge, and look to the context.

It is true that the judge said and repeated, that "there must have been a necessity to take life." But, in the same connection, he said : "And you are to be the judges of the necessity." He said further, that the party must be without fault in bringing on the difficulty ; and must believe at the time that he is in "such immediate danger of losing his own life or of receiving serious bodily harm as renders it necessary to take the life of assailant, to save his own life or to prevent serious bodily harm." And he still further explained, that "it is not what the prisoner at the bar may have thought about it, but he is to be measured by a man of ordinary reason and firmness ; that is the mode, the measure, and the standard by which his actions on this occasion are to be judged, and are to be judged of by you, and you are to answer, "What would a man of ordinary reason and firmness have done on this occasion? And if such a man would have acted as he did, why, then, a case of self-defence would be made out, and it would be your duty to acquit him," &c. As we understand it, all this was entirely in accordance with what this court decided in the late case of *State* v. *Wyse*, 33 S. C., 594, and the cases there cited ; and the defendant has no just cause to complain of the charge, when considered as a whole.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and the appeal dismissed.