### STATE v. MIMS *ET AL.*

#### (130 S. E., 752)

CRIMINAL LAW—INSTRUCTION DEFINING SIMPLE ASSAULT AS ONE WITH NATURE'S WEAPONS HELD INCORRECT AS TAKING THAT QUESTION FROM JURY.—In prosecution for assault and battery with intent to kill, instruction defining "simple assault and battery" as being with fist and skull, or weapons that nature has provided, *held* incorrect and misleading as conveying to jury impression that, if any weapons or means were used in inflicting battery other than hands and person, it as a matter of law and necessity could not constitute simple assault and battery, thus taking question from jury.

Before HENRY, J., Sumter, February, 1925.   Reversed.

B. C. Mims and another were convicted of assault and battery of a high and aggravated nature and they appealed.

The exceptions, referred to in the dissenting opinion, are as follows:

"(1) That his Honor erred, it is respectfully submitted, in charging the jury as follows: 'Then you come on down the line and consider the next offense embraced, which is simple assault and battery. You want to know what that is. Simple assault and battery is an assault and battery with the weapons that nature has provided you with; no outside weapons. There may be aggravated assault and battery; that is, where a very strong man beats up a woman or little child. But the ordinary simple assault and battery is the fist and skull'—the error being that the definition of simple assault and battery given by the Court is incorrect and misleading, in that it conveyed to the jury the impression that if any weapon or means was used in inflicting the battery other

than the hands and person of the assailant, it, as a matter of law and of necessity, could not constitute a simple assault and battery.

"(2) That his Honor erred, it is respectfully submitted, in charging the jury as follows: 'Now, the next thing he has to establish is that at the time he committed the battery or struck he was in danger of losing his own life, or saving his body from serious harm. He has to establish that by the greater weight of the evidence on the point of self-defense. I repeat: That at the time he struck he was in danger of losing his own life or of sustaining serious bodily harm from his antagonist'—said error being that the jury were given the impression that in a case of this sort a man has no right to strike, except to save his own life or prevent serious bodily harm, whereas it is respectfully submitted that a man has the right to oppose force with force, and to resist a threatened attack, or an assault with force proportioned to the force threatened against him.

"(3) His Honor erred, it is respectfully submitted, in charging the jury as follows: 'The next thing he has to establish is that there was no reasonably safe means left to him to avoid it; he has got to show that by the greater weight of the evidence on the question of whether or not he could have escaped. He has got to avoid—Of course, if the other man was armed, had a deadly weapon, a pistol or gun, the man would be endangering his position more by running away from it. You have to consider all these things in reaching your conclusions on that'—the error being that the jury were given the impression that a man has no right to resist an assault or a threatened battery upon his person if by running away he could avoid it, whereas, it is respectfully submitted that in assault and battery cases a man has the right to oppose force with force, and has the right to strike one who is about to strike him, without playing the part of a coward and running away. He is only bound to retreat to avoid taking human life, and, short of that, has the right to stand his ground and resist a threatened attack.

"(4) His Honor erred in charging the jury, it is respectfully submitted, as follows: 'He has got to show you that a necessity was upon him at the time he struck, not after, not necessarily a·long time before it, but at the time, that the necessity was to save his life or to protect himself from suffering serious bodily harm'—the error being that the jury were thereby instructed that a man did not have the right to strike another in resisting a threatened attack, except to save his life or to protect himself from suffering serious bodily harm, whereas, it is respectfully submitted that in assault and battery cases no such necessity might exist, but one has the right to oppose force with force, and to use such force as is necessary to resist a threatened attack, although before taking the life of another he must show such necessity.

"(5) That his Honor erred, it is respectfully submitted, in charging the jury as follows: 'If you should find from the evidence in this case that, had the prosecuting witness died, it would have been a case of murder, then your verdict in this case would be guilty, which would mean guilty of assault and battery with intent to kill and murder. Or you will have to consider manslaughter, as, if he had died, and under the consideration of the evidence, it had been a case of manslaughter, then your verdict would be guilty of assault and battery of a high and aggravated nature'—the error being that the jury were given the impression that, if the prosecuting witness had died, and the defendants been guilty of manslaughter, they must be convicted of assault and battery of a high and aggravated nature, whereas one guilty of manslaughter in the event of the death of the assailed might be guilty of only a simple assault and battery, had death not resulted."

*Messrs. Harby, Nash & Hodges,* for appellants, cite: *Classes of assault and battery distinguished:* 17 S. C., 55; 98 S. C., 114; 82 S. E., 278. *Simple assault and battery as provocation:* 1 Bishop on Crim. Law (7th Ed), 509 and 519; 1 Russell on Crimes (5th Ed.), 765; 1 East's Pleas of

the Crown, 406.  *Duty to retreat:* 5 C. J., 750; 2 R. C. L., 550.  *Defense of relatives:* 5 C. J., 751.  *Plea of son assault demesne:* 1 Bay 351; 96 Va., 107; 30 S. E., 452.

*Messrs. Frank A. McLeod, Solicitor, and Epps & Levy,* for respondent, cite: *Classes of assault and battery defined:* 2 R. C. L., 543; 14 S. C., 346; 17 S. C., 55; 17 S. C., 62; 51 S. C., 265; 86 S. C., 367.  *Special request to charge necessary: Ruling not objected to no ground for exception:* 69 S. C., 460.  *Duty to retreat:* 121 S. C., 350; 114 S. C., 241; 73 S. C., 257; 73 S. C., 60.

November 23, 1925.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The defendants were indicted upon a charge of assault and battery with intent to kill, on the person of N. L. Broughton, and were brought to trial on February 11, 1925, before his Honor, Judge J. K. Henry, and a jury.  The defendants were convicted of assault and battery of a high and aggravated nature, and made a motion for a new trial, which motion was overruled by the presiding Judge, whereupon defendants received a sentence of the Court, from which, within due time, due notice of appeal to the Supreme Court was given.

Exception 1 is as follows:

"That his Honor erred, it is respectfully submitted, in charging the jury as follows: "Then you come on down the line and consider the next offense embraced, which is simple assault and battery.  You want to know what that is. "Simple assault and battery" is an assault and battery with the weapons that nature has provided you with; no outside weapons.  There may be aggravated assault and battery; that is where a very strong man beats up a woman or a little child.  But the ordinary simple assault and battery is the fist and skull'—the error being that the definition of simple assault and battery given by the Court is incorrect and mis-

leading, in that it conveyed to the jury the impression that if any weapon or means was used in inflicting the battery other than the hands and person of the assailant, it, as a matter of law and of necessity, could not constitute a simple assault and battery."

This exception must be sustained. The jury could have found a verdict of guilty of simple assault and battery under the evidence in the case. While ordinarily an assault and battery with a weapon calculated to inflict death or serious bodily harm takes the case out of simple assault and battery, yet the jury have the right to take into consideration the threats made, if any, by the prosecutor, the size of the parties, the physical inequality of the men engaged in the fight. There was slight injury according to the evidence of the doctor. The weapon in the opinion of the jury might not have been regarded by the jury as ordinarily deadly. All of the facts and circumstances were for the jury's determination. His Honor in his charge took from the jury the question of simple assault and battery.

*State v. Knox,* 98 S. C., 114; 82 S. E., 278, is directly in point on this issue. There, Knox cut the prosecuting witness with a knife, inflicting a rather serious wound. He claimed he was assaulted and acted in self-defense; the State, that he was the assailant. Judge Rice refused to submit the issue of simple assault and battery to the jury. He was reversed, because, says the Court:

"The rule is well settled that an indictment for a higher offense will sustain a conviction for a lower offense included in the higher, and that a jury can find a defendant guilty of an assault and battery under an indictment charging assault and battery with intent to kill. 2 Enc. Pl. & Pr., 856, 857. There was testimony from which the jury might have drawn a reasonable inference, that the defendant was only guilty of assault and battery."

This exception is sustained. The other exceptions are not considered.

New trial granted.

MR. CHIEF JUSTICE GARY, MR. JUSTICE MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. JUSTICE MARION (concurring) : I think the facts of this case clearly distinguish it from the case of *State v. Jones,* 130 S. E., 747, filed November 10, 1925. In that case the defendant used a shotgun at a distance of 30 to 40 feet, shooting from the rear and inflicting a very serious wound. In this case the defendant used a pair of automobile pliers in a hand to hand scrap with a much larger man, inflicting "rather slight wounds on Mr. Broughton's head." I am of the opinion it cannot be soundly held as a matter of law that the jury were not entitled to draw the inference that "the defendant was only guilty of assault and battery." *State v. Knox,* 98 S. C., 114; 82 S. E., 278.

MR. JUSTICE COTHRAN (dissenting) : I do not concur in the opinion of Mr. Justice Watts in this case, for the reasons which follow; and am of opinion that all of the exceptions should be overruled, the others as well as the sole one considered in the leading opinion. I think that the case is controlled by the case of *State v. Jones,* 130 S. E., 747, filed Nov. 10, 1925.

The defendants were indicted upon a charge of assault and battery with intent to kill and murder, and were convicted of assault and battery of a high and aggravated nature. The sentence does not appear in the record for appeal. The defendants have appealed from various exceptions which will be reported and which will be considered herein.

The facts as detailed by the witness for the State, many of which are admitted by the defendants, were as follows:

The prosecutor, Broughton, had shot a foxhound belonging to the defendant, B. C. Mims, which was prowling around his back yard and porch. On the morning of the difficulty Broughton had gone to Pinewood, S. C., in his automobile. The Mims brothers were also in the town. B. C. Mims waited at the automobile of Broughton, standing in

the street, until Broughton came out of the bank, crossing the street toward his car. B. C. Mims accosted him and in his testimony gives this account of what happened:

"He walked into the middle of the street and waited for Mr. Broughton near some cars parked in the center of the street, one of which he presumed was Broughton's. When Broughton came out of the bank, witness called to and spoke to him and asked him, 'Did you shoot one of my dogs?' Mr. Broughton said: 'I don't know whose dog it was; I shot a cur.' Witness said: 'No, you haven't shot any cur; you have shot one of my fox dogs. What was he doing?' Broughton replied, 'Scratching at the screen wire.' Witness said, 'What else?' Witness then told Mr. Broughton the dogs were his, and if they did him any harm he was willing to pay for it, but he didn't want him to shoot any more of them. Broughton then replied he would shoot any one that came into his yard, witness just as well. Witness then hit Mr. Broughton, and they clinched and fought. He was not expecting any difficulty with Mr. Broughton. If he hadn't come at witness in such a bull-dozing way it would have been no fuss."

Upon cross-examination B. C. Mims further stated:

"That he did not consider himself as good a man physically as Broughton; that he had a pair of automobile pliers, and hit him somewhere in the head; didn't know how many times he hit Mr. Broughton; he was hitting him as fast as he could, both before and after Broughton grabbed him. Witness had no intention of hurting Mr. Broughton seriously. He regarded it nothing more than a fight."

The evidence for the State further tended to show that while the fight between B. C. Mims and Broughton was going on, the defendant H. M. Mims, a brother of B. C. Mims, ran out of a nearby store, to where they were fighting, and struck Broughton in the head with handcuffs which he carried as a constable, and was restrained by bystanders from further attacking him. It was also testified to by a

witness for the State that B. C. Mims had told him that if he found out who shot his dog he would have him to whip. Witness then asked him, "Suppose he is not your size?" Mims said, "There is a way to size a man to his size." The physician who attended Broughton testified:

"He found seven or eight rather slight wounds on Mr. Broughton's head. They were put on there by some blunt instrument. They were not serious. I put some antitetanus on them; sometimes you have tetanus from wounds like that. I wouldn't consider the wounds I found dangerous as they were; of course, if they became infected they would be dangerous."

Assuming that some or all of the exceptions may have been meritorious (which, however, is not to be considered as intimated even), if there had been the slightest ground upon which the jury could possibly have based a verdict of simple assault and battery; as I read the evidence, there was no such ground and the errors of the Court are harmless.

It appears beyond dispute, it is in fact admitted by the defendant B. C. Mims, that he was greatly provoked, intensely angered at the shooting of his foxhound, a natural but not a legal provocation; that he suspected Broughton of being the offender; that he learned of Broughton's presence in Pinewood, knew his automobile, and waited near it for Broughton; that he began the colloquy and, without the provocation even of opprobrious epithets, began the difficulty by striking him; that he had in his hand a pair of automobile pliers (certainly a formidable and dangerous weapon); that he hit Broughton "somewhere in the head, but didn't know how many times he hit Mr. Broughton, he was hitting him as fast as he could both before and after Broughton grabbed him," and only desisted when the parties were separated. Take these facts in connection with the testimony of a State's witness, quoted above, as to the threat of B. C. Mims and his statement, "there is a way to size a man to his size" (denied by B. C. Mims), the jury may well have

concluded that B. C. Mims had prepared himself for the punishment he proposed to inflict upon the man who had shot his dog. Considering also the fact that Broughton had no weapon and was only defending himself from an attack unwarranted, I do not see how any other inference can be drawn than that the assault was without provocation, with a deadly weapon, and of a high and aggravated character; not the slightest ground for the conclusion that it was simple.

As to H. M. Mims, the jury was authorized by the evidence to find that he had run to his brother's assistance and had struck the prosecutor in the head with handcuffs. If, as has been held by this Court, an attack upon an officer of the law may be considered as a circumstance of aggravation, certainly an attack by an officer with a dangerous weapon may likewise be so considered. It was his duty to preserve the peace, not to assist in its breach.

Whatever error there may have been in the charge in reference to self-defense, it was entirely harmless, as there was not even a claim on the part of B. C. Mims that he acted in self-defense, and certainly no evidence tending to establish that fact. He began the difficulty and struck the first blow, provoked as he says by the bull-dozing manner of the prosecutor, and then proceeded to batter his head with the pliers.

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.