15104

STATE v. CHAMBERS *ET AL.*

(9 S. E. (2d), 549)

*Messrs. Hoke B. Black* and *Clarence A. Cappell,* for appellants,

*Messrs. Hubert E. Nolin,* Solicitor and *W. E. Bowen,* for respondent.

June 17, 1940.

The opinion of the Court was delivered by MR. JUSTICE STUKES. ·

The following statement is taken from the agreed Transcript of Record in this appeal:

"The defendants, Cloyis Chambers, Garland Reeves and Mutt Rawlings, were indicted at the May term of the Court of General Sessions, 1939, for assault and battery with intent to kill upon one J. J. Nickles, the weapons used being alleged in the indictment as a knife and pieces of iron. The case was thereafter certified to the Greenville County Court by the Clerk of Court. On July 13, 1939, the defendants were tried before his Honor, Oscar Hodges, and a jury. The jury returned a verdict of guilty of assault and battery of a high and aggravated nature as against the defendants, Cloyis Chambers and Mutt Rawlings; and a verdict of a simple assault and battery as against Garland Reeves.

"There was testimony on the part of the State to the effect that the defendant Rawlings cut the prosecutor with a knife, while there was also testimony on the part of the defense that the only weapon used by the said Rawlings was a broom handle.

"The circumstances attending the encounter are briefly as follows: The prosecutor, J. J. Nickles, and the defendants, Chambers and Rawlings, were at a house near the City of Greenville, and that all three were drinking to some extent. The two named defendants were walking, and the prosecutor was in his truck. All three left the house together, the prosecutor having given the two defendants a ride back to town. When they reached a point near the home of the defendant and when the parties separated, there arose a dispute as to the ownership of a small quantity of whiskey which was on the seat of the truck. The prosecutor contended that it was his whiskey, while the defendants con-

tended that they were the ones who had bought the whiskey and that it belonged to them. The prosecutor contended at the trial, that while they were arguing about the whiskey, the defendant, Rawlings, cut at him with a knife, while the prosecutor was still in the truck under the wheel, cutting the left lapel of his coat. He further testified that he then got out of the truck and that both the defendants jumped on him. The defendants contended at the trial, that although the whiskey was theirs, the defendant, Chambers, threw it back onto the seat of the truck and that the prosecutor then jumped out of the truck and attacked him (Chambers) with a piece of iron, knocking him down. That Rawlings then went to the aid of Chambers and only used a broom handle, which was in the truck, in the attempt to rescue Chambers. Chambers admitted the use of the knife, contending that he used the knife in defense of himself after the attack on him by the prosecutor with the piece of iron. The deputy sheriff who made the arrest of the defendants testified that on the way to the jail, Rawlings, who was under the influence of whiskey, stated to them that he was the one who had cut the prosecutor. Rawlings denied this at the trial. The defendant, Reeves, was not with the parties when the affair began, but came from the house nearby and entered the affray but only used his fists. The wounds of the prosecutor were of a serious nature.

"The clothes, consisting of trousers, underclothes, coat and shirt, were separately identified, but introduced as a batch, the hat was introduced later, after being identified by a separate witness, the prosecutor. The clothes were cut and bloody, the coat having among other cuts, a gash of 4 or 5 inches on the left lapel, running downward. Chambers exhibited a wound on the leg, just above the ankle, which he testified was inflicted by the prosecutor during the course of the fight with the piece of iron. At the time of the identification and introduction of the clothes of the prosecutor, his wounds, their nature and position had already been testified to by the attending physician.

"Notice of a motion for a new trial was given and this motion was later heard and denied by Judge Hodges. The defendants were thereupon sentenced as follows: Cloyis Chambers and Mutt Rawlings for a period of 12 months each, and the defendant, Garland Reeves, for a period of 30 days or to pay a fine of $50.00.

"Notice of intention to appeal was, as to all defendants, within due time, served upon the county solicitor. However, this appeal is prosecuted only on the parts of Cloyis Chambers and Mutt Rawlings."

There are five exceptions but appellants argue them under four questions which will be considered *seriatim*.

"1. Was there error in admitting into evidence, over objection, the bloody clothing of the prosecutor?" (Exception 1.)

The clothing worn by the prosecutor at the time of the affray was identified by witnesses for the State and admitted in evidence over the objection of the defendants made upon the ground that they were incompetent in view of the fact that the attending physician had already testified to the nature, number and location of the wounds upon the body of the prosecuting witness. Appellants cite in support of their position that such admission in evidence of the clothing was prejudicial error, 13 R. C. L., 928, a Nebraska case and several Texas cases. However, these authorities appear to be illustrative of a minority rule. In R. C. L., immediately preceding the quotation referred to by appellants in their argument, is found the following: "It is settled by numerous authorities that the clothing worn by the deceased at the time of his death may be introduced in evidence, proof first having been given of the identity of the articles of apparel and of their unchanged condition."

Furthermore, the new text, American Jurisprudence, the successor of Ruling Case Law, states at page 602 of Volume 20, as follows: "Clothing of the accused or of the victim of a crime may be exhibited."

The only case touching the subject in this State which has come to our attention is *State v. Symmes,* 40 S. C., 383, 19 S. E., 16, 19, where clothing of the deceased was offered in evidence by the State in reply and the exception of the appellant thereabout was as follows: "Because the judge erred in overruling the * * * objection to the introduction by the state's solicitor of the 'shirt and pants' of the deceased in reply; the defense having closed, and the introduction of said garments not having been offered in evidence by the State in the opening of the case." The exception was overruled and it was stated by the Court that the objection to the admissibility was that the introduction of the clothing in evidence was after the defense had closed and was not in reply to any evidence offered in behalf of the defense. Thus it is at least implied that there would have been no question of the admissibility of the clothing had it been offered by the State as a part of its case.

It is gathered from the meager record here that the doctor who had treated the prosecutor for his admittedly serious wounds had already testified in detail as to their number and location upon the body; further, however, that it was in dispute between the prosecutor and the defendants as to whether the cuts or some of them were received when the prosecutor was seated in his truck or after he alighted, so that the cuts through the clothing may well have constituted valuable evidence on such issue and was corroborative of the recited testimony of the physician as to the location of the knife wounds.

Appellants' position before the trial Court in making their objection was simply that because the physician had testified as to such location the clothing was inadmissible, although in their exception to the contrary ruling they argue that the bloody and torn condition of the clothing served to prejudice and influence the jury against the defendants, which point, as indicated, was not made at the time of the objection; and we think the objection specious for it did not challenge the admissibility in evidence

of the clothing had it been offered prior to the doctor's testimony.

As indicated above, appellants' position here, that the condition of the clothing was calculated to prejudice the jury and deny appellants a fair trial, should have been plainly made below as a ground of objection to the admissibility so that it could have been ruled upon by the trial Judge in order to make it a proper subject of appeal to this Court.

Furthermore, such a question as to the admissibility of evidence must be, and is, largely within the sound discretion of the trial Court and we do not find from the record before us that there was any erroneous exercise of such in this case. Hence the question is resolved against the appellants and Exception 1 is overruled.

"2. Did his Honor err in his charge as to what constitutes malice, in his use of the illustration as to what was a deadly weapon, in which he included a knife?" (Exception II.)

The definition of malice objected to by appellants occurred in the charge to the jury in connection with the instruction upon the first degree of assault and battery, with intent to kill, and as neither of the defendants was so convicted, the appellants having been found guilty of assault and battery of a high and aggravated nature' and the third defendant of simple assault and battery, the jury found no malice on the part of any one of them, either express or implied, so that any question as to the charge with respect to malice was made academic by the verdict of the jury. Exception II is overruled.

"3. Did his Honor err in his definition of the offense of simple assault and battery?" (Exceptions III and IV.)

The exceptions involved in this question refer to the Court's main instruction on this point, but regardless of any question as to its correctness we do not think the ex-

ceptions well taken in view of the subsequent charge given under the following circumstances. After the jury had retired and considered the case for some time they returned and asked for further instructions with respect to assault and battery of a high and aggravated nature and simple assault and battery, and the Court proceeded to so further instruct in which the following occurred: "Simple assault and battery is where no deadly weapon is used, for instance where two men of equal size and strength meet and have a fight and there is no serious bodily injury inflicted, that would be a simple assault and battery. Do you understand it now? Are there any other questions you want to ask about it?"

Certainly no legal fault can be found with this instruction in this case. At the conclusion of this additional charge one of appellants' attorneys made oral request, which was complied with by the Court, as follows: "Could I ask the Court to charge the jury if they have a reasonable doubt as to which offense it is, they will have to find the lower offense?"

Thus viewing the charge as a whole whether or not error can be found in the early portion now objected to, we think it was entirely fair in such respect and that appellants were not thereby in any way prejudiced. Furthermore, if counsel had desired further or other instructions thereabout he should have so requested the Court as he did in another respect, above set out.

Upon this question appellants cite *State v. Mims,* 133 S. C., 230, 130 S. E., 752, but such authority is not applicable for in that case the trial Court refused to submit to the jury the question of the guilt of the defendant of simple assault and battery as was submitted in this case under proper instructions, as we have seen. For definitions of the degrees of assault and battery see *State v. Jones,* 133 S. C., 167, 130 S. E., 747.

Exceptions III and IV are overruled.

"4. Was there error in allowing the question as to whether the defendants, while under arrest, made any contention that the prosecutor had done anything to them to cause them to assault him?" (Exception V.)

The portion of the record here referred to follows:

"Q. Mr. Thompson, in your investigation of these boys here, and on the trip to jail did either of them ever make any contention to the best of your memory that Mr. Nickles ever did anything to them to cause them to assault him?

"By Mr. Black: That is an improper question, to ask if they ever made any contention.

"By Mr. Bowen: To him.

"The Court: I think you can ask if they made any other statements.

"Mr. Bowen: I want to connect it up.

"By Mr. Black: The man was under arrest and he didn't have to make any contention.

"The Court: I will allow the question.

"By Mr. Bowen: Q. Did he? A. Not that I recall."

The "Statement" quoted at the outset above contains the following with reference to other testimony of this officer: "The Deputy Sheriff who made the arrest of the defendants testified that on the way to the jail, Rawlings, who was under the influence of whiskey, stated to them that he was the one who had cut the prosecutor."

The foregoing testimony in question and answer form appears to be a further examination of the officer as to other statements and resulted in the answer that none was made that the officer could recall, not that none was made. We do not think that this can be exaggerated into an invasion of the right of an accused to "stand mute", as is argued by appellants. It is noted that the officer had testified that the appellant, Rawlings, had stated, apparently entirely voluntarily, that he had done the cutting and the question objected to was as to any further statement in justification and the officer testified only that he did not recall any.

Appellants rely upon the decision in *State v. Hester,* 137 S. C., 145, 134 S. E., 885, but a mere reading of it demonstrates that the instant case falls far short of the rule of the *Hester. case* and the authorities therein cited and reviewed, to the effect, stated generally, that testimony as to the failure of a defendant to deny or refute a charge of guilt, made when he is under arrest and in the presence of officers, is inadmissible in evidence in his subsequent trial. Thus we think Exception V should be, and it is, overruled.

The judgment below is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE J. STROM THURMOND concur.