21438

The STATE, Respondent, v. Charles T. MATTISON, Appellant
(277 S. E. (2d) 598)

*Charles W. Wofford and Carl F. Muller,* both of *Wyche, Burgess, Freeman & Parham,* Greenville, *for appellant.*

*Atty. Gen. Daniel R. McLeod and Asst. Atty. Gen. Russell D. Ghent, Columbia and Sol. William W. Wilkins,* Greenville, *for respondent.*

April 22, 1981.

LEWIS, Chief Justice:

Appellant was convicted of the murder of his estranged wife and was sentenced to life imprisonment. He appeals, contending that he is entitled to a new trial because, allegedly, the trial judge erred (1) in the charge of the law of implied malice, (2) in excluding certain testimony concerning "voodoo", "roots", or witchcraft, (3) in failing to charge the law of involuntary manslaughter, and (4) in instructing as to the permissible verdicts. These questions will be discussed in the order stated.

Appellant first argues that the charge on implied malice created an irrebuttable presumption on the issue and thereby unconstitutionally shifted the burden of proof. The trial judge twice instructed the jury on the issue of implied malice, the first in his main charge and the second during the deliberations of the jury, at their request. Both instructions were, in all material respects, in the following language:

. . . Malice may be express or it may be implied. It may be express, as for example, lying in wait for some one, or it may be manifested by implication from the facts and circumstances attending the transaction. For example, the law says that if one intentionally kills another with a deadly weapon, the implication of malice arises. In other words, the law implies malice from the use of a deadly weapon. Now, if facts are proved, sufficient to raise a presumption of malice to your satisfaction, such a presumption would be rebuttable and it is always for the jury to determine from all the evidence in the case whether or not malice has been proved beyond a reasonable doubt.

Recently, in *State v. Crocker*, 272 S. C. 344, 251 S. E. (2d) 764, in upholding the constitutionality of the law in this State on implied malice, we pointed out that the implication arising from the doctrine of implied malice does not

create a conclusive presumption, with a shifting of the burden of proof to the defendant; but, instead, "the resulting implication only *permits* rather than *requires* the jury to infer malice."

When the charge in this case is considered as a whole, ▌ we think the instructions on the law of implied malice made it clear that any presumption or inference of malice was rebuttable and whether malice had been proved was an issue of fact for the jury to determine under all of the evidence. The jury was explicitly instructed that the burden was upon the State to prove every element of the offense charged beyond a reasonable doubt. We do not think that the instructions could have been reasonably interpreted by the jury to mean that the burden of proof shifted to the appellant to rebut any inference of malice that might arise from the use of a deadly weapon.

While we find no reversible error in the present in- ▌ structions, we strongly suggest to the Trial Bench that a more appropriate instruction on *implied malice* would deal with the evidentiary nature of the presumption and that the implication does not require the jury to infer malice but only permits it. In other words, the presumption or inference of malice from the use of a deadly weapon is simply an evidentiary fact to be taken into consideration by the jury, along with other evidence in the case, and to be given such weight as the jury determines it should receive. The inference of malice *may* be drawn from proof of the use of a deadly weapon if the jury concludes such is proper after considering all of the facts and circumstances in evidence. See: *State v. DeWitt,* 254 S. C. 527, 176 S. E. (2d) 143.

Next, appellant contends that the trial judge excluded certain testimony concerning "roots" or witchcraft and thereby prevented him from presenting his full defense.

Appellant sought to show that he was afraid of his wife at the time of the killing. He sought to introduce testimony to

show that he had a fear that his wife was atempting to work "roots" on him. The record indicates that this is the use of evil spirits and witchcraft to cause great harm to the victim. It was sought to have the jury consider "evidence of the appellant's fear of "roots" and its effect on him in evaluating the degree of the crime, if any, . . . and the insanity issue."

Error is charged in the exclusion of some of the testimony offered to establish appellant's fear of his wife because of her alleged practice of "roots". Much of the testimony excluded concerned the statements of the appellant in which he told others of his belief and fear that his wife was practicing "roots". Error is also charged in the exclusion of statements allegedly made by the deceased to a third party as to her involvement with "roots". These statements and declarations by appellant and the deceased were properly excluded as hearsay. *State v. Bigham,* 133 S. C. 491, 131 S. E. 603.

Finally, appellant objects to the exclusion of a portion of his experts' testimony on the "roots" phenomenon. Appellant called two psychiatrists as witnesses who claimed to be experts in the study of witchcraft or "roots". He attempted to have the experts give a dissertation on how witchcraft affects people. The trial judge excluded testimony as to the general effect of the fear of witchcraft or "roots" on people, but permitted such testimony directed solely to its effect upon appellant. The testimony in question was properly excluded as irrelevant.

The trial judge confined the consideration of the jury to the charges of murder and voluntary manslaughter and refused to submit the lesser offense of involuntary manslaughter. The next question involves appellant's contention that involuntary manslaughter should have also been submitted, on the theory that the evidence gave rise to an inference that the pistol used by him in the killing was discharged as the result of a reckless act (Section 16-3-60, South Carolina

Code of Laws, 1976) while engaged in a scuffle with the deceased over the weapon.

We have held that the submission of a charge of manslaughter, under an indictment for murder, is not proper where the testimony fails to suggest any theory upon which a verdict of manslaughter could rest. *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130.

Appellant testified that, on the day of the killing, he went to the parking lot where his wife was parked to ask her to go to lunch. As he left his car, he removed a gun which he had in the glove compartment of the car he was driving and placed it in his coat pocket. His wife observed the gun as she approached the scene. An argument ensued. The wife took the gun from his pocket, a scuffle arose and one shot was fired but apparently struck no one. He placed the gun back in his pocket and remembers nothing after this point.

Appellant's testimony, therefore, sheds no light on the immediate facts of the killing. Certainly, no inference could arise from his testimony that his wife was shot through his reckless use of the pistol.

Although several witnesses were in the area during the shooting only one testified as to actually having seen the shooting. She indicated they were scuffling, he dragged his wife to his car, put the gun to her head, shot her and then shot himself. The second witness said he saw the scuffle, but could not see the victim when the shots were fired. A third witness saw the scuffling, but did not see what happened when the shots were fired. The testimony of these witnesses showed that the scuffle was not over possession of the pistol, but resulted from the efforts of appellant to force his wife to go to his car when she did not want to go. Finally, unable to get her into his car, he placed the pistol to the side of her head and shot her; then shot himself in the head. He lived; his wife died shortly thereafter.

This record contains no evidence to sustain a charge of involuntary manslaughter; and the trial judge properly refused to submit that issue to the jury.

Finally, appellant contends that the trial judge directed the jury to find appellant either guilty of murder, guilty of manslaughter, or not guilty by reason of insanity, without the alternative of a "not guilty" verdict, thereby improperly commenting on the facts.

Initially the trial judge instructed the jury that the possible verdicts were: guilty of murder, guilty of manslaughter, or not guilty by reason of insanity. Upon request of appellant, the court gave an additional instruction that they could also return a verdict of not guilty "which would be the finding by the jury that this defendant was not guilty of murder. Subsequently, the jury returned to the courtroom and requested further instructions. Appellants counsel then requested the court to clarify its previous instruction as to a "not guilty" verdict so as to make it clear that a not guilty verdict would mean that appellant was not guilty of any charge in the indictment. This request was granted and the instruction given, with the foreman indicating, at the request of the court, that the jury understood the clarification. The jury returned to their room and later returned with a verdict of guilty of murder.

Any confusion in the instructions on the form of the verdicts was completely clarified and the record simply contains no factual basis to support the contention that the instructions in question constituted a comment on the facts. In any event, appellant has shown no prejudice.

Judgment affirmed.

LITTLEJOHN, NESS, GREGORY and HARWELL, JJ., concur.