685 S.E.2d 802

**The STATE, Respondent,**

v.

**Johnny Rufus BELCHER, Appellant.**

No. 26729.

Supreme Court of South Carolina.

Heard May 14, 2009.

Decided Oct. 12, 2009.

598

C. Rauch Wise, of Greenwood, and James E. Bryan, Jr., of Laurens, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, of Columbia, and Solicitor Jerry W. Peace, of Greenwood, for Respondent.

Justice KITTREDGE.

Appellant Johnny Rufus Belcher was convicted of murder and possession of a firearm during the commission of a violent crime following the shooting of his cousin, Fred Suber. The jury was charged with the offenses of murder and voluntary manslaughter, as well as self-defense. Of special significance was the jury instruction that permits an inference of malice from the use of a deadly weapon.

■ It has long been the practice for trial courts in South Carolina, as sanctioned by this Court, to charge juries in any murder prosecution that the jury may infer malice from the use of a deadly weapon. We granted Belcher's petition to argue against this precedent. Having carefully scrutinized the historical antecedents to this permissive inference, we hold today that a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide. We therefore reverse Belcher's convictions and remand for a new trial.

## I.

Fred Suber was shot and killed during a cookout with family and friends. Those in attendance included Suber's ex-girlfriend and Hansel Brown, whom Suber believed was the father of his ex-girlfriend's child. Suber confronted Brown and an argument ensued. Belcher interceded.

The testimony presented at trial revealed conflicting versions of the event. The State's view tended to show that after Belcher confronted Suber, Belcher retrieved a gun from Brown and, with no justification or excuse, fatally shot Suber. Conversely, Belcher presented evidence that after the confrontation between Suber and Brown was seemingly resolved, Suber without provocation confronted him (Belcher) with a gun. Belcher fled to Brown's truck where he retrieved a gun from Brown and fired it at Suber while he (Suber) was approaching, gun in hand.

The jury was instructed that "malice may be inferred by the use of a deadly weapon" and convicted Belcher of murder and the related firearm charge. This direct appeal is before us pursuant to Rule 204(b), SCACR, certification.

## II.

### A.

Because the evidence presented a jury question on self-defense, Belcher asserts it was error to charge the jury that it may infer malice from the use of a deadly weapon. We agree.

The trial court charged the jury, in part, as follows:

Murder is the unlawful killing of another person with malice aforethought either expressed or inferred.... Malice can ... be inferred from facts and circumstances that are proven by the State. Malice may be inferred by the use of a deadly weapon. But these inferences are evidentiary only and may be considered by you along with all the other evidence and given such weight, if any, as you determine that they should receive.

The charge given by the trial court has heretofore been considered textbook. Yet when confronted with Belcher's

challenge, the learned and experienced trial court judge expressed "concern about [the charge] rising to a charge on the facts."

Where a jury is asked to consider a lesser included offense of murder or a defense, Belcher asserts the permissive inference charge violates our common law and our constitutional prohibition against charging juries on the facts.[1] We elect to decide this appeal solely under the common law. Relying on Belcher's common law challenge, we conclude that our modern day usage of this jury charge has strayed from this Court's original jurisprudence.

## B.

We begin by reviewing the progression of the jury charge in this state.[2]

We begin with *State v. Hopkins,* 15 S.C. 153 (1881). Hopkins was convicted of murder. He pled accident, and objected to the following "use of a deadly weapon" implied malice instruction: "In every case of intentional homicide the presumption of malice arises, and the fact of killing intentionally by the use of a deadly weapon being shown in any case, the burden of proof is thereby imposed upon the defendant to rebut such presumption, unless the facts and circumstances shown in the testimony in behalf of the [S]tate incidentally rebut it."[3] *Id.* at 156. Under the circumstances, the charge was error, and Hopkins was granted a new trial.

*Hopkins* cited to the rule that "[t]here is no doubt whatever of the isolated proposition that the law presumes malice from the mere fact of homicide, but there are cases as made by the proof to which the rule is inapplicable." The Court explained that, "[w]hen all the circumstances of the case are fully proved

---

1. S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law.").

2. We have selected a series of cases which represent our jurisprudence in this area.

3. In reviewing this dated precedent, we note that the law then imposed the burden of proving various defenses (self-defense, for example) on the defendant. Under modern jurisprudence, burden shifting is not permitted. For this reason, we analyze this older precedent in light of prevailing law that forbids burden shifting.

there is no room for presumption. The question becomes one of fact for the jury, under the general principle that he who affirms must prove, and that every man is presumed innocent until the contrary appears." *Id.* at 156–57 (citing *State v. Coleman,* 6 S.C. 185 (1875)). Hopkins then quoted at length from *Coleman:*

This presumption is not applicable when the facts and circumstances attending the homicide are disclosed in evidence so as to draw a conclusion of malice or want of malice, as one fact, from the evidence. Presumptions of this class are intended as substitutes in the absence of direct proof, and are in their nature indirect and constructive. The best evidence of the state of mind attending any act is what was said and done by the person whose motive is sought for. The motive that impels to the taking of human life is no exception to this rule, and the importance of the consequences that depend on the accurate ascertainment of its nature in such cases, affords the strongest ground for limiting indirect and constructive proofs to the narrow grounds within which they belong. It appears, from the record before us, that the proofs embraced a statement of the origin of the difficulty between the parties; their conduct towards each other down to the time of the killing, and, to some extent, the subsequent conduct of the prisoner. When the evidence is of such a character, it must be presumed to be sufficient to enable the jury to draw from it a conclusion of fact one way or the other. Under such circumstances there was no necessity, and, therefore, no propriety in resorting to any general presumption arising by operation of law. When the circumstances preceding and attending an act of this character are full, as in the present case, the prisoner is entitled to the benefit of any doubt that may arise, and cannot be deprived of such benefit by any presumption of guilt arising by operation of law from the naked fact of homicide. A charge may be erroneous, although the propositions of which it is composed may *severally* be conformable to recognized authority, if in its scope and bearing in the case it was likely to lead to a misconception of the law.

*Id.* at 157–58 (quoting *Coleman,* 6 S.C. at 186–87).

We next review the case of *State v. Levelle,* 34 S.C. 120, 13 S.E. 319 (1891), *overruled on other grounds by State v.*

*Torrence*, 305 S.C. 45, 69 n. 5, 406 S.E.2d 315, 328 n. 5 (1991). Levelle killed his wife and was convicted of murder. He appealed on several grounds, including a challenge to the State's requested jury instruction that "malice will be inferred from the use of a deadly weapon." Although that precise charge was not given, the Court addressed the issue, noting:

> [E]ven if it be assumed that the judge must be regarded as adopting the language used in the solicitor's ninth request, quoted above, we still think there was no error. In 2 Bish. Crim. Law[ ] § 680, it is said: *"As general doctrine, subject, we shall see, to some qualification, the malice of murder is conclusively inferred from the unlawful use of a deadly weapon, resulting in death."* And to the same effect, see 3 Greenl. Ev. §§ 145, 147. This doctrine has also been recognized in this state. *See State v. Toohey,* [2 Rice Dig. 105 (1819) ]; *State v. Ferguson,* [20 S.C.L. (2 Hill) 619 (1835) ]; *State v. Smith,* [33 S.C.L. (2 Strob.) 77 (1847) ]. It is true that the inference of malice drawn from the use of a deadly weapon may be rebutted by testimony, but, in the absence of any such testimony, malice may be and is inferred from the use of a deadly weapon causing death.

*Levelle,* 34 S.C. at 127, 13 S.E. at 320 (emphasis added).

*Levelle's* reliance on section 680 of *2 Bishop Criminal Law,* a criminal law treatise, is instructive but not entirely complete. It is our view that *Levelle* considered and incorporated the referenced "qualification" when it concluded that, "[i]t is true that the inference of malice drawn from the use of a deadly weapon *may be rebutted by testimony, but, in the absence of any such testimony,* malice may be and is inferred from the use of a deadly weapon causing death." *Id.* at 127, 13 S.E. at 320 (emphasis added). The recognition that some facts will not permit the inference of malice from the use of a deadly weapon lies at the heart of the qualification.

More specifically, Bishop's criminal law treatise ties the qualification to the proposition that malice is inferred from the "unlawful use of a deadly weapon." The malice inference would, therefore, have no place where the use of a deadly weapon was "lawful." As we shall see, the significant import of the qualifying term "lawful" was effectively abandoned in our subsequent decisions.

*Levelle* never expanded upon the "in the absence of any such testimony [rebutting malice]" qualification, perhaps because it was not necessary to the disposition of the appeal. We are persuaded, though, that this qualification relates to homicide prosecutions where the evidence shows the death may have been something less than murder—that is, mitigated, excused or justified. Our belief is supported by *Hopkins* and a comment in the section in Bishop's treatise immediately following the one cited in *Levelle:*

> If there is to be a rigid rule of law on the subject, it is reasonable to hold, that, where one uses a deadly weapon *without justification,* he evinces a disregard for human life and safety amounting to "malice."

2 JOEL PRENTISS BISHOP, COMMENTARIES OF THE CRIMINAL LAW § 681 (6th ed. 1877) (emphasis added).

Beyond the support we find in *Hopkins,* our imputation of section 681 of Bishop's treatise into the meaning of *Levelle's* qualifying language is further supported by the case of *State v. Jackson,* 36 S.C. 487, 15 S.E. 559 (1892). *Jackson* affirmed a murder conviction where "there was not a shadow of testimony tending to show any excuse or provocation for firing the fatal shot which resulted in the instant death of the [victim]." *Id.* at 490, 15 S.E. at 560. The Court approvingly noted that "[t]he proof tends to show that the killing was done with a deadly weapon, and, under such circumstances, the law implies malice, and the killing would be murder, *unless there were some circumstances of justification or excuse in the case "* *Id.* at 490, 15 S.E. at 561 (emphasis added).

We pause here, for we view the approach to the "use of a deadly weapon" implied malice charge as seemingly settled law from *Hopkins* and the *Levelle–Jackson* qualification. This Court, however, then began a slow, and at first an almost imperceptible, retreat, as *State v. Byrd* illustrates. 72 S.C. 104, 51 S.E. 542 (1905).

In *Byrd,* this Court, in reviewing the jury instruction stated that: "The use of a deadly weapon presumes malice, *but the presumption may be rebutted.* So, after all, it is left for the jury to say, from all the facts and circumstances, whether the killing was done with malice, or not." *Id.* at 110, 51 S.E. at 544 (emphasis added). Relying on *Levelle* and *Jackson,* the

*Byrd* Court found no error associated with the jury charge: "This was in exact accordance with the law...." *Id.* at 110, 51 S.E. at 544. *Byrd* references *Levelle* and *Jackson,* yet approved of the charge even with evidence of mitigation.

The Court never expressly confronted the contradiction of inviting a jury to infer malice from the use of a deadly weapon where evidence was presented that would reduce, mitigate, excuse or justify the homicide, which was the core feature of *Hopkins.* In fact, whatever vestige remained of the *Levelle–Jackson* qualification was unceremoniously abandoned in two cases from 1920.

The first case is *State v. Hardin,* 114 S.C. 280, 103 S.E. 557 (1920). Hardin was indicted for murder. He pled self-defense and was convicted of manslaughter. Hardin presented the same argument Belcher advances. The jury in *Hardin* was charged that "malice may be implied from the use of a deadly weapon." Hardin excepted as follows:

> The error is that his honor had no right to instruct the jury that they might infer malice from the mere fact of killing with a weapon calculated to do serious bodily harm or to take life, for the reason that this is a charge on the facts contrary to the Constitution, in that it undertakes to intimate to and instruct the jury what facts in the case are evidence of malice.

> It was also error, in that after all the evidence is out, the presumption of malice from the use of a deadly weapon fades from the case, and the jury must find malice, if at all, from the evidence, without any aid from the court as to what weight should be attached to killing with a deadly weapon, or what inference they may draw from such.

*Id.* at 290, 103 S.E. at 560.

Without discussion, the *Hardin* Court rejected the challenge to the jury instruction: "The exceptions are all overruled, being without merit." *Id.* at 295, 103 S.E. at 561.

The second case from 1920 is *State v. Wilson,* 115 S.C. 248, 105 S.E. 341 (1920). Wilson claimed the killing was accidental but was convicted of murder. The jury was charged that "[m]alice may be implied from the intentional use of a deadly weapon." *Id.* at 249, 105 S.E. 341. Significantly, the trial court omitted the qualifying words "without just cause or

excuse[,]" to which Wilson excepted. *Id.* at 249, 105 S.E. 341. Notwithstanding the absence of the language "without just cause or excuse[,]" *Wilson* held the "presiding judge[ ] delivered a full, clear, and able charge." *Id.* at 249, 105 S.E. 341.

*Hardin's* summary approval of the charge that malice may be presumed in any homicide from the use of a deadly weapon, coupled with *Wilson's* approval of omitting the language "without just cause or excuse[,]" marked the end of the *Levelle–Jackson* qualification.

Subsequently, in the case of *State v. Fuller*, 229 S.C. 439, 93 S.E.2d 463 (1956), an extensive malice charge was upheld that included the instruction "that implied malice is presumed from the use of a deadly weapon...."[4] *Id.* at 445, 93 S.E.2d at 467. This portion of the malice charge was not central to Fuller's appeal, for Fuller's appeal focused on the purported lack of malice due to his deficient mental state.

After *Fuller*, no reported decisions addressed this charge until the case of *State v. Lee*, 255 S.C. 309, 178 S.E.2d 652 (1971). In *Lee*, this Court noted that, "the use of a deadly weapon implies malice." *Id.* at 318, 178 S.E.2d at 656. To support this statement of law, *Lee* cited to *Byrd*, discussed *supra*.

On the heels of *Lee*, we come to *State v. Maxey*, 262 S.C. 504, 205 S.E.2d 841 (1974) and *State v. Alford*, 264 S.C. 26, 212 S.E.2d 252 (1975). *Maxey* and *Alford* upheld the "use of a deadly weapon" implied malice instruction where self-defense was submitted to the jury. *Maxey*, 262 S.C. at 507–08, 205 S.E.2d at 842; *Alford*, 264 S.C. at 34, 212 S.E.2d at 255. In fact, part of the charge in *Alford* was "[t]he State could just prove that the act was done with a deadly weapon and stop right there and malice would have been proven." *Alford*, 264 S.C. at 34, 212 S.E.2d at 255. The *Alford* Court found no error.

---

4. The complete portion of this charge was: "I charge you that implied malice is presumed from the use of a deadly weapon, or from the wilful, deliberate and intentional doing of an unlawful act without just cause or excuse." The language may appear to incorporate the *Levelle–Jackson* qualification, but the use of the disjunctive term "or" maintains the "use of a deadly weapon" inference as a standalone, independent statement of the law.

Thus, with this Court's continuing imprimatur, by the 1970s, juries were routinely charged in any murder prosecution involving a deadly weapon that "malice is presumed from the use of a deadly weapon." The critical observation is that the charge was proper even where evidence was presented that would reduce, mitigate, excuse or justify the killing.

## C.

The law, of course, today speaks in terms of "permissive inferences," not "presumptions." This transition resulted from the United States Supreme Court's pronouncement that the Due Process Clause of the Fourteenth Amendment is violated when a jury charge creates a mandatory presumption and impermissibly shifts the burden of proof to the defendant. *See Sandstrom v. Montana,* 442 U.S. 510, 524, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (holding that "burden-shifting presumption[s]" or "conclusive presumption[s]" deprive a defendant of the "due process of law" and are therefore unconstitutional); *Mullaney v. Wilbur,* 421 U.S. 684, 703–04, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (holding that the "Due Process Clause" forbids a state from placing the burden on the accused to prove his actions reduced the crime from "murder to manslaughter").

Following *Sandstrom* and its progeny, this Court followed suit. In *State v. Mattison,* 276 S.C. 235, 238, 277 S.E.2d 598, 600 (1981), we stated that an "appropriate instruction on implied malice would deal with the evidentiary nature of the presumption and that the implication does not require the jury to infer malice but only permits it."

*Mattison,* however, expressed no reluctance with the underlying premise that malice is inferred from the use of a deadly weapon. The jury in *Mattison* was charged: "[T]he law says that if one intentionally kills another with a deadly weapon, the implication of malice arises. In other words, the law implies malice from the use of a deadly weapon." *Id.* at 237, 277 S.E.2d at 599–600. As discussed more fully below, the transparent error in the use of the word "intentional" is that self-defense involves an intentional act.

Two years later, in *State v. Elmore,* 279 S.C. 417, 308 S.E.2d 781 (1983), *overruled on other grounds by State v. Torrence,*

305 S.C. 45, 69 n. 5, 406 S.E.2d 315, 328 n. 5 (1991), this Court again addressed the challenged jury instruction in light of the burden shifting jurisprudence of the United States Supreme Court. The instruction used in Elmore's trial was held to have been a mandatory presumption, rather than a permissive inference, and therefore unconstitutional. The *Elmore* Court went on to set forth a jury charge it felt comported with the Due Process Clause.

> The law says if one intentionally kills another with a deadly weapon, the implication of malice may arise. If facts[ ] are proved beyond a reasonable doubt, sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case, and you may give it such weight as you determine it should receive.

*Id.* at 421, 308 S.E.2d at 784. The Court noted that "only slight deviations from this charge will be tolerated." *Id.* at 421, 308 S.E.2d at 784. *Elmore* articulated the contemporary jury charge, until today.

## D.

In examining the legal proposition in a homicide prosecution that an inference of malice may arise from the use of a deadly weapon, we are unable to harmonize the earlier writings of this Court with our modern jurisprudence.

One appellate court has described this jury charge as a "half-truth." *Glenn v. State,* 68 Md.App. 379, 511 A.2d 1110, 1126 (1986). In discussing its meaning behind this observation, *Glenn* notes that malice includes the absence of justification, excuse and mitigation.[5] *Glenn,* 511 A.2d at 1122. When

---

5. Under South Carolina law, "[m]alice is a legal term implying wickedness and excluding a just cause or excuse. The term malice indicates a formed purpose and design to do a wrongful act under the circumstances that exclude any legal right to do it." *State v. Fennell,* 340 S.C. 266, 275 n. 2, 531 S.E.2d 512, 517 n. 2 (2000); *see also State v. McDaniel,* 68 S.C. 304, 312, 47 S.E. 384, 387 (1904) (same). "It is something which springs from wickedness, from depravity, from a heart devoid of social duty and fatally bent on mischief." *Arnold v. State,* 309 S.C. 157, 163, 420 S.E.2d 834, 837 (1992); *see also Singletary v. State,* 281 S.C. 444, 446, 316 S.E.2d 369, 370 (1984) (same); *State v. Kinard,* 373 S.C. 500, 504, 646 S.E.2d 168, 170 (Ct.App.2007) (same).

malice is viewed in light of these component parts, it becomes clear that inferring malice from the use of a deadly weapon is indeed only a "half-truth." The absence of justification, excuse or mitigation cannot be inferred from the use of a deadly weapon standing alone. Other facts and evidence (or the absence of other facts and evidence) are required for the fulfillment of these component parts.

The burden shifting present in our earlier cases aside, the holding of *Hopkins* and the qualification set forth in *Levelle* and *Jackson* hew more closely to what we believe is the proper application of the charge than that expressed in *Byrd, Wilson, Hardin, Fuller, Lee, Maxey, Alford, Mattison* and *Elmore.*

■ Under our policy-making role in the common law, we hold that the "use of a deadly weapon" implied malice instruction has no place in a murder (or assault and battery with intent to kill[6]) prosecution where evidence is presented that would reduce, mitigate, excuse or justify the killing (or the alleged assault and battery with intent to kill).

The use of the term "intentional" is instructive. Say, for example, a homicide occurs by the use of a deadly weapon under circumstances warranting a self-defense instruction. The killing would be intentional, yet under our currently sanctioned charge, the jury would be permitted to find malice merely because "if one intentionally kills another with a deadly weapon, the implication of malice may arise." *Elmore,* 279 S.C. at 421, 308 S.E.2d at 784. That highlights the "half-truth" nature of the charge.[7]

---

6. Because the crime of assault and battery with intent to kill requires malice, our holding today applies to ABWIK. *State v. Wilds,* 355 S.C. 269, 275, 584 S.E.2d 138, 141 (Ct.App.2003).

7. Today's decision does not stand alone. Other states that have addressed this issue have rejected the charge under similar circumstances. *E.g., Farris v. Commonwealth,* 77 Ky. 362 (Ky.1878) (noting that when "there is evidence before the jury from which they might conclude that the killing was done in necessary self-defense or in the sudden heat of passion, such an instruction may be fatally misleading"); *Glenn v. State,* 68 Md.App. 379, 511 A.2d 1110, 1126–28 (1986) (reversing a conviction for "assault with intent to murder" by recognizing that the jury charge only speaks to the "intent [that] may be inferred" from the use of a deadly weapon, but that the charge is misleading because it

## E.

We do not reach our decision lightly. The State understandably urges this Court to honor what has been treated as a settled fixture in our criminal law. The able trial judge diligently prepared the charge in faithful adherence to our precedent. Moreover, the trial court charged the jury that the "killing has to be unlawful" and that "[t]here has to be a deliberate and intentional design to use or employ or handle a deadly weapon so as to endanger the life of another without just cause or excuse." Thus, while we acknowledge the State's argument, we are firmly convinced that instructing a jury that "malice may be inferred by the use of a deadly weapon" is confusing and prejudicial where evidence is presented that would reduce, mitigate, excuse or justify the homicide. A jury charge is no place for purposeful ambiguity.

## F.

■■■■ Errors, including erroneous jury instructions, are subject to harmless error analysis. *See Lowry v. State*, 376 S.C. 499, 510–11, 657 S.E.2d 760, 766 (2008). In many murder prosecutions, as Belcher concedes, there will be overwhelming evidence of malice apart from the use of a deadly weapon.[8]

---

does not address whether the "intent was unexcused or unjustified or [whether] the intent was unmitigated"); *Erwin v. State*, 29 Ohio St. 186, 191 (Ohio 1876) ("[W]here the attending circumstances [of the killing] are shown in detail, some of which tend to disprove the presence of malice or purpose to kill, it is misleading and erroneous to charge a jury that in such a case the law raises a presumption of malice and intent to kill from the isolated fact that death was caused by the use of a deadly weapon."); *State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244, 252 (1994) ("[I]t is erroneous in a first degree murder case to instruct the jury that if the defendant killed the deceased with the use of a deadly weapon, then intent, malice, willfulness, deliberation, and premeditation may be inferred from that fact, where there is evidence that the defendant's actions were based on some legal excuse, justification, or provocation."). For a discussion surrounding the history of this charge, see Bruce A. Antkowiak, *The Art of Malice*, 60 RUTGERS L. REV. 435 (2008).

8. "In many, if not most, murder cases the [inferred malice from the use of a deadly weapon] charge will be harmless, even if couched in terms of a presumption.... Obviously[,] when a defendant walks into the store [and] shoots and robs the clerk, a charge that the jury may infer malice is not prejudicial to the defendant." (Brief of Appellant 9).

Here, however, the error in charging that malice may be inferred by the use of a deadly weapon cannot be considered harmless. Evidence of self-defense was presented, thereby highlighting the prejudice resulting from the charge. It is entirely conceivable that the only evidence of malice was Belcher's use of a handgun. We need go no further than saying we cannot conclude the error was harmless beyond a reasonable doubt.

## III.

Today we return to the rationale underlying *Hopkins, Levelle* and *Jackson* and hold that where evidence is presented that would reduce, mitigate, excuse or justify a homicide (or assault and battery with intent to kill) caused by the use of a deadly weapon, juries shall not be charged that malice may be inferred from the use of a deadly weapon.[9] The permissive inference charge concerning the use of a deadly weapon remains a correct statement of the law where the only issue presented to the jury is whether the defendant has committed murder (or assault and battery with intent to kill)

Because our decision represents a clear break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on direct review or not yet final where the issue is preserved.[10] *Griffith v. Kentucky*, 479

---

9. The standard implied malice charge remains valid, as does the general permissive inference instruction: "If facts, are proved beyond a reasonable doubt, sufficient to raise an inference of malice to·your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case, and you may give it such weight as you determine it should receive." In addition, we neither restrict the State from arguing to the jury for a finding of malice from the use of a deadly weapon, nor restrict a defendant from arguing the absence of malice or the presence of reasonable doubt in this regard. It is axiomatic that some matters appropriate for jury argument are not proper for charging. "Do jurors need the court's permission to infer something? The answer is, of course not." Bruce A. Antkowiak, *The Art of Malice*, 60 Rutgers L. Rev. 435, 476 (2008).

10. The decision today overrules in part considerable precedent of this Court and the court of appeals. We overrule all cases involving a homicide or a charge of assault and battery with intent to kill where two factors co-exist: (1) approval of the jury instruction that malice

U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("hold[ing] that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final"); *Harris v. State*, 273 Ga. 608, 543 S.E.2d 716, 717–18 (2001) (reversing a murder conviction and overruling precedent that had approved inference of intent to kill from use of a deadly weapon and applying the new rule "to all cases in the 'pipeline'—i.e., cases which are pending on direct review or not yet final"). Our ruling, however, will not apply to convictions challenged on post-conviction relief. *See generally Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). We reverse and remand for a new trial.[11]

**REVERSED AND REMANDED.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.

---

may be inferred from the use of a deadly weapon; and (2) evidence was presented that, if believed, would have reduced, mitigated, excused or justified the homicide or the charged ABWIK. We overrule all such cases only insofar as they meet these criteria. The following represents our best efforts to catalogue the cases that are overruled: *State v. Reese*, 370 S.C. 31, 633 S.E.2d 898 (2006); *State v. Norris*, 285 S.C. 86, 328 S.E.2d 339 (1985); *State v. Griffin*, 277 S.C. 193, 285 S.E.2d 631 (1981); *State v. Mattison*, 276 S.C. 235, 277 S.E.2d 598 (1981); *State v. Arnold*, 266 S.C. 153, 221 S.E.2d 867 (1976); *State v. Alford*, 264 S.C. 26, 212 S.E.2d 252 (1975); *State v. Maxey*, 262 S.C. 504, 205 S.E.2d 841 (1974); *State v. Martin*, 216 S.C. 129, 57 S.E.2d 55 (1949); *State v. Deas*, 202 S.C. 9, 23 S.E.2d 820 (1943); *State v. Martin*, 149 S.C. 464, 147 S.E. 606 (1929); *State v. Cleland*, 148 S.C. 86, 145 S.E. 628 (1928); *State v. Strickland*, 147 S.C. 514, 145 S.E. 404 (1928); *State v. Wilson*, 115 S.C. 248, 105 S.E. 341 (1920); *State v. Hardin*, 114 S.C. 280, 103 S.E. 557 (1920); *State v. Hollis*, 108 S.C. 442, 95 S.E. 74 (1918); *State v. Jones*, 101 S.C. 111, 85 S.E. 239 (1915); *State v. Crosby*, 88 S.C. 98, 70 S.E. 440 (1911); *State v. Owens*, 79 S.C. 125, 60 S.E. 305 (1908); *State v. Byrd*, 72 S.C. 104, 51 S.E. 542 (1905); *State v. Foster*, 66 S.C. 469, 45 S.E. 1 (1903); *State v. Taylor*, 56 S.C. 360, 34 S.E. 939 (1900); *State v. Petsch*, 43 S.C. 132, 20 S.E. 993 (1895); *State v. Symmes*, 40 S.C. 383, 19 S.E. 16 (1894); *State v. McIntosh*, 40 S.C. 349, 18 S.E. 1033 (1894); *State v. Ballington*, 346 S.C. 262, 551 S.E.2d 280 (Ct.App. 2001); *State v. McLemore*, 310 S.C. 91, 425 S.E.2d 752 (Ct.App.1992).

**11.** Belcher's successful challenge to this jury charge requires the Court to reverse his convictions and remand for a new trial. We therefore decline to reach Belcher's remaining appellate issues. *See Hughes v. State*, 367 S.C. 389, 408–09, 626 S.E.2d 805, 815 (2006) (noting that

---

appellate court need not reach remaining issues on appeal when addressed issue is dispositive).