**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Christopher Spriggs, Appellant.

Appellate Case No. 2009-140446

———————————

Appeal From Charleston County
Deadra L. Jefferson, Circuit Court Judge

———————————

Unpublished Opinion No. 2013-UP-435
Heard October 17, 2013 – Filed November 27, 2013

———————————

**AFFIRMED**

———————————

John H. Blume, III, of Blume Norris & Franklin-Best
LLC and Emily C. Paavola, of Death Penalty Resource &
Defense Center, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Salley W. Elliott, and Assistant
Attorney General William M. Blitch, Jr., all of Columbia;
and Solicitor Scarlett Anne Wilson, of Charleston, for
Respondent.

———————————

**PER CURIAM:** Appellant Christopher Spriggs seeks review of his conviction for voluntary manslaughter, arguing the trial court erred in: (1) charging the jury on voluntary manslaughter during his murder trial when the trial court had previously indicated that it would to defer to Appellant's wishes concerning a jury charge on a lesser-included offense; (2) charging the jury that malice may be inferred from the use of a deadly weapon; and (3) denying his motion to submit an affidavit of the jury foreman. We affirm.

## FACTS/PROCEDURAL HISTORY

Appellant lived with his mother, Shelly Greene, and her boyfriend, David Deschene, in Monck's Corner, South Carolina. In the early morning of December 8, 2007, Appellant was at home hanging out with four teenage friends: Charles Weaver, Steven Turnage, Jessica Gyulai, and Tyler Kent. While together, the friends engaged in drinking alcohol, smoking marijuana, and taking ecstasy pills. Deschene was also in the home, but he was watching television in his bedroom. Around 2:00 a.m., Deschene received a phone call from Greene, who reported that she had been beaten and tortured by Kindu Molique Bost (Victim). Deschene then passed the phone to Appellant. Greene relayed to Appellant that she was at the InTown Suites in North Charleston, South Carolina and asked that Appellant and Deschene come and assist her in collecting her belongings.

Appellant was visibly upset after speaking with Greene. Before leaving to assist Greene, Appellant took a knife from the kitchen and placed it the glove box of Turnage's Mitsubishi. Appellant and his four friends then left in the Mitsubishi. Deschene drove separately in his own vehicle.

After about a forty-five minute drive, the group arrived at the hotel. There, the group observed Greene had blood dripping from one ear, several marks around her neck, and blood in her eyes. After assisting Greene in retrieving her luggage, all of the group, except for Greene, got into their respective vehicles and prepared to leave. As Greene stood outside the hotel room door, carrying some final items, Victim arrived at the parking lot in a taxi. Victim immediately exited the taxi and ran between the two parked cars towards where Greene was standing. Appellant exited the Mitsubishi and intercepted Victim. Subsequently, Turnage and Kent exited the vehicle to assist Appellant. The three teenagers then engaged in a fist-fight with Victim. Within a few minutes, the three teenagers were able to subdue Victim.

As Victim laid on the ground of the parking lot, the group attempted to leave. Before the group could get away, Victim got up from the ground and charged toward the passenger-side door of Deschene's vehicle before Greene could pull it closed. As Victim threw punches through the passenger-side door, Kent exited the Mitsubishi and attempted to pull Victim from the car. Victim refused to relent, even after Kent pulled several dreadlocks from Victim's head. Simultaneously, Appellant took the knife from the glove box and approached Deshene's vehicle. Appellant then swung the knife, stabbing Victim twice in the back. In the process, Appellant accidentally stabbed Kent in the arm. Subsequently, Appellant and Kent ran back to the Mitsubishi.

Despite his wounds, Victim continued to try and get inside Deschene's vehicle. Greene and Deschene eventually succeeded in pushing Victim out of the vehicle, and both vehicles drove away from the hotel. Victim died from his stab wounds approximately one hour later.

On May 5, 2008, Appellant was indicted for murder. At trial, the trial court instructed the jury as to the elements of murder, that malice may be inferred from the use of a deadly weapon, voluntary manslaughter, and defense of others. The jury found Appellant guilty of the lesser-included offense of voluntary manslaughter. The trial court sentenced Appellant to fifteen years' imprisonment.

**LAW/ANALYSIS**

**I.  Voluntary Manslaughter Charge**

On appeal, Appellant does not challenge whether there was sufficient evidence in the record to support the charge of voluntary manslaughter. Rather, Appellant argues the trial court erred in charging the jury on voluntary manslaughter when it had previously "promised" that it would defer to Appellant's wishes "to go all or nothing" concerning a charge on a lesser-included offense. He further argues the trial court's subsequent change in position rendered his trial fundamentally unfair. We find no merit to this argument.

Appellant cites to *State v. Jones*, 343 S.C. 562, 541 S.E.2d 813 (2001), in support of his argument. In *Jones*, the court held that it was error for the trial court to alter a reasonable doubt instruction after defense counsel's closing argument. *Id.* at 578, 541 S.E.2d at 821-22. The *Jones* court noted that such alteration was fundamentally unfair because defense counsel had reasonably relied upon the trial

court's initial instruction by specifically incorporating the instruction's language into his closing argument. *Id.* Thus, *Jones* requires a defendant to reasonably rely on the trial court's ruling to his or her detriment in order for a subsequent change to the ruling to impact the fundamental fairness of the defendant's trial.

The present case differs significantly from *Jones*. The trial court in the present case indicated that it would defer to Appellant's wishes as to the lesser-included offense during a pre-trial colloquy with defense counsel. While discussing the issue with defense counsel, the trial court indicated that it had no means of determining what would be charged until after it heard all of the evidence. The trial court further stated that it would charge the applicable law as supported by the facts of the case. Thus, the trial court essentially acknowledged that it was required to determine the law to be charged based on the evidence presented at trial. *See State v. Hernandez*, 386 S.C. 655, 660, 690 S.E.2d 582, 585 (Ct. App. 2010).

Given the full discussion between the trial court and defense counsel as well as the pre-trial timing of the trial court's comment, we find the trial court's statement was akin to a preliminary ruling. The trial court merely indicated its initial inclination to charge what the defendant requested. As a general rule, "[t]rial judges must not be held, conclusively, to preliminary rulings made without benefit of all the pertinent and relevant evidence." *State v. Floyd*, 295 S.C. 518, 521, 369 S.E.2d 842, 843 (1988). *See Hernandez*, 386 S.C. at 660, 690 S.E.2d at 585. Further, the trial court must determine the law to be charged based on the evidence presented at trial. Accordingly, we find Appellant did not have a right to rely on the trial court's "promise."

## II.  Permissive Inference Instruction on Malice

Appellant argues the trial court erred in instructing the jury that it could infer malice from the use of a deadly weapon and this error was not harmless beyond a reasonable doubt. We disagree.

Six months after Appellant's trial concluded, our supreme court in *State v. Belcher*, 385 S.C. 597, 600, 685 S.E.2d 802, 803-04 (2009), held that a jury charge instructing that malice may be inferred from the use of a deadly weapon "is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide." The court, however, reiterated the long-

standing rule, "[e]rrors, including erroneous jury instructions, are subject to harmless error analysis." *Id.* at 611, 685 S.E.2d at 809.

On appeal, Appellant cites to *Caldwell v. Bell*, 288 F.3d 838 (6th Cir. 2002), as an example that a permissive inference instruction on malice cannot be deemed harmless when there is evidence of provocation, justification, or excuse. However, Appellant's reliance on *Caldwell* is misplaced. In *Caldwell*, the district court did not instruct the jury that it could *infer* malice from the use of a deadly weapon. Rather, the district court instructed the jury to *presume* malice from the use of a deadly weapon. 288 F.3d at 840. Thus, *Caldwell* is distinguishable in that it presented the concern that the jury instruction had a substantial effect on the verdict because it prevented the jury from considering alternative theories presented by the defense, such as accident or provocation, when the defendant was found to have used a deadly weapon.

Here, the jury found that Appellant acted without malice by convicting Appellant of voluntary manslaughter. *See State v. Pilgrim*, 320 S.C. 409, 414, 465 S.E.2d 108, 111 (Ct. App. 1995), *overruled on other grounds*, *State v. Foust*, 325 S.C. 12, 479 S.E.2d 50 (1996) ("The distinction between murder and manslaughter is the presence of malice in murder and the absence of malice in manslaughter."). The jury's ultimate verdict demonstrates that the trial court's instruction did not preclude the jury from seriously considering the evidence of justification and excuse presented at trial. Accordingly, we find the trial court's instruction that the jury could infer malice from Appellant's use of a deadly weapon was harmless error.

## III. Admissibility of Juror Affidavit

Appellant argues the trial court erred in denying his motion to submit an affidavit of the jury foreman in order to rebut a factual assertion in the trial court's order denying Appellant's motion for a new trial. We disagree.

The general policy in South Carolina is "courts should not intrude into the privacy of the jury room to scrutinize how jurors reached their verdict." *State v. Hunter*, 320 S.C. 85, 88, 463 S.E.2d 314, 316 (1995). Consistent with this policy, Rule 606(b), SCRE, prohibits the introduction of a juror's affidavit concerning the statements, thought processes, and conduct of jurors during deliberations. However, an exception to this categorical prohibition on the introduction of a juror's affidavit regarding deliberations has been recognized where a juror's

affidavit suggests the conduct of the jury rendered the trial fundamentally unfair. *See Shumpert v. State*, 378 S.C. 62, 68-69, 661 S.E.2d 369, 372 (2008); *Hunter*, 320 S.C. at 88, 463 S.E.2d at 316.

In the affidavit at issue, the jury foreman explains his personal considerations for voting against the murder conviction and lists the results of a preliminary poll at the beginning of deliberations.  The affidavit contains no allegations that the jury's verdict was tainted by any juror misconduct.  Because the affidavit in no way suggests that the actions of the jury rendered the trial unfair, we find the affidavit does not rise to the high level of seriousness required for the admission of a juror's affidavit concerning deliberations.  Accordingly, we find the trial judge properly denied Appellant's motion to submit the jury foreman's affidavit.

**AFFIRMED.**

**HUFF, GEATHERS, and LOCKEMY, JJ., concur.**