# The Supreme Court of South Carolina

The State, Respondent,

v.

Michael Juan Smith, Petitioner.

Appellate Case No. 2018-002050

---

ORDER

---

After careful consideration of the State's petition for rehearing, the Court grants the petition for rehearing, dispenses with further briefing, and substitutes the attached opinion for the opinion previously filed in this matter.

s/ Donald W. Beatty      C.J.

s/ John W. Kittredge      J.

s/ Kaye G. Hearn      J.

s/ John Cannon Few      J.

s/ George C. James, Jr.      J.

Columbia, South Carolina

June 17, 2020

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Michael Juan Smith, Petitioner.

Appellate Case No. 2018-002050

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Richland County
Robert E. Hood, Circuit Court Judge

---

Opinion No. 27958
Heard December 12, 2019 – Filed March 18, 2020

Re-Filed June 17, 2020

---

## REVERSED

---

Appellate Defender David Alexander, of Columbia, for Petitioner.

Attorney General Alan Wilson, Senior Assistant Deputy Attorney General William M. Blitch Jr., and Solicitor Byron E. Gipson, all of Columbia, for Respondent.

---

**PER CURIAM:**  In October 2013, a young woman (the victim) was shot by Petitioner Michael Smith in the Five Points area of Columbia.  It was undisputed Smith did not intend to harm her.  Rather, Smith claimed he was acting in self-defense by shooting at a group of men who had threatened him.  Smith missed his intended target and hit the victim by accident.  Smith was subsequently charged with the attempted murder of the victim and a host of other gun-related charges, including possession of a firearm by a person convicted of a felony.

At the outset of trial, in opening statements, counsel for Smith conceded guilt to the felon-in-possession offense, but denied the attempted murder charge and asserted a claim of self-defense.  In doing so, Smith implicitly acknowledged he had an express intent to kill the men at whom he was shooting, but asserted his actions were justified given his belief that he faced an imminent threat to his own life.  The State ultimately conceded Smith presented evidence he acted in self-defense, and that therefore a jury charge to that effect must be given.  Nonetheless, the State inexplicably requested the trial court charge the jury on implied malice.[1]  The law at the time of trial precluded an implied malice jury charge (based on the use of a deadly weapon) when a viable self-defense claim existed.[2]  Perhaps recognizing this, the State sought to create a new category of implied malice for "felony attempted-murder," with the predicate felony being the felon-in-possession charge.  As noted, Smith had already conceded guilt to this charge.  Thus, in requesting the new felony attempted-murder charge, which the trial court accepted over Smith's objection, the State essentially circumvented then-existing law

---

[1] *See, e.g.*, *State v. Wilds*, 355 S.C. 269, 276–77, 584 S.E.2d 138, 142 (Ct. App. 2003) (explaining malice must be implied when there is *no positive evidence* of a deliberate intention to unlawfully take the life of another (i.e., when there is no evidence of express malice), but instead circumstances demonstrate that a reasonably prudent man would have known there was a strong likelihood death would follow his actions (citing 40 C.J.S. *Homicide* § 34–35 (1991))).

[2] *See, e.g.*, *State v. Belcher*, 385 S.C. 597, 600, 685 S.E.2d 802, 803–04 (2009) (holding that "a jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse or justify the homicide"), *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 501–03, 832 S.E.2d 575, 582–83 (2019) (extending the holding in *Belcher* to prohibit trial courts from ever instructing juries that malice may be inferred from the use of a deadly weapon, "[r]egardless of the evidence presented at trial").

expressly precluding an implied malice charge.  Consequently, the trial court erred in accommodating the State's request for an implied malice charge.  The error was compounded, for the State relied on a crime—the so-called crime of felony attempted-murder—which South Carolina has not adopted.

Adhering to the majority approach, we find felony attempted-murder is not a recognized crime in South Carolina, and, therefore, any jury charge to that effect was error.  Likewise, we hold trial courts may no longer give an implied malice charge when there has been evidence presented that the defendant acted in self-defense.[3]  We therefore reverse Smith's convictions for attempted murder and the possession of a weapon during the commission of a violent crime and remand for a new trial.[4]

## FACTS/PROCEDURAL HISTORY

On the night in question, Smith and four companions were in the Five Points area of Columbia.  While waiting on a street corner for the traffic signal, Smith's group was approached by two men (the rival group) who called Smith a "slob"—a derogatory name for a member of the Bloods street gang.[5]  The two groups parted without exchanging any additional words or insults.

---

[3] This is a slightly different holding than the one we reached in *Burdette*, where we found an implied malice charge *based on the use of a deadly weapon* could never be given.  Here, we find *any* implied malice charge cannot be given if there is also evidence presented that the defendant acted in self-defense.

[4] As we explain further below, Smith was convicted of four other gun charges stemming from this incident.  He does not challenge any of those convictions on appeal, and our decision today therefore should not be read to require a re-trial on three of the four gun charges.  In particular, we affirm Smith's convictions for (1) possession of a weapon by a person convicted of a prior violent felony; (2) unlawful possession of a weapon by a person convicted of a prior crime of violence; and (3) unlawful carrying of a handgun.  However, given that we reverse Smith's conviction for attempted murder, we must also reverse and remand his conviction for the possession of a weapon during the commission of a violent crime.  Smith must be re-convicted of committing a violent crime before he can properly be found to have illegally possessed a weapon during that crime.

[5] Smith is a self-professed member of the Bloods.

Several minutes later, Smith's group began walking back toward their car. On the way, they were again confronted by the rival group, who had been joined by a third man. The two groups began posturing and exchanging insults.

At this point, the testimony at trial diverged significantly between the State's witnesses and the defense witnesses. According to the State's witnesses, following the verbal altercation, the rival group turned their backs and attempted to leave, and Smith pulled out a gun and fired several shots at the rival group while they were walking away. According to the defense witnesses, following the verbal altercation, an unidentified individual yelled that a member of the rival group had a gun, the rival group began shooting at Smith's group, and Smith pulled out his own gun and fired one shot in return.

Regardless of who shot first, Smith's shot missed the rival group and hit the victim, who was waiting for a taxicab nearby. The bullet severed her spinal cord, causing instant, irreversible paralysis. Law enforcement caught Smith fleeing the scene within seconds of the shooting.

Smith was indicted for the attempted murder of the victim and four gun charges: (1) possession of a weapon by a person convicted of a prior violent felony;[6] (2) unlawful possession of a weapon by a person convicted of a prior crime of violence;[7] (3) unlawful carrying of a handgun; and (4) possession of a weapon during the commission of a violent crime.[8] During opening statements, Smith twice conceded guilt to the first two gun charges, telling the jury he had already pled guilty to those same offenses in federal court.

The State conceded during the trial there was sufficient evidence of self-defense to

---

[6] *See* S.C. Code Ann. § 16-23-500 (Supp. 2019). Unrelated to this incident, Smith had been previously convicted of burglary in the second degree.

[7] *See* S.C. Code Ann. § 16-23-30(B) (2015). Smith's same conviction for burglary in the second degree served as the "crime of violence" element for this crime as well.

[8] Smith was also indicted on a fifth gun charge, possession of a stolen handgun. However, the trial court later granted Smith's motion for a directed verdict on this charge because the State did not present any evidence Smith knew he was in possession of a stolen firearm. *See* S.C. Code Ann. § 16-23-30(C) ("A person shall not *knowingly* . . . possess any stolen handgun . . . ." (emphasis added)).

charge the jury.  However, the State additionally requested the trial court charge the jury on felony attempted-murder, claiming it was "another way to infer malice."  The State argued that "a person who is not allowed by law to carry a gun would be" committing an inherently dangerous felony, and thus—as in the ordinary application of the felony-murder rule—the jury could infer malice because the attempted murder occurred during the commission of a felony.  Notwithstanding then-existing law which expressly disallowed an implied malice charge when evidence of self-defense existed, the trial court relented to the State's request for a charge on felony attempted-murder, instructing the jury:

> Now, the law also allows you to infer malice if you conclude that the attempted murder was a proximate direct result of the commission of a felony.  And for that regard, two of the gun charges, possession of a firearm by a person convicted of a crime of violence and possession of a weapon by a person convicted of a violent felony[,] would be felonies under our law.

> You can imply that malice existed if a person in the commission of a felony at the time of the attempted fatal blow [--] if one attempts to kill another during the commission of a felony, the inference of malice may arise.

The jury found Smith guilty of attempted murder and the gun charges.  Smith appealed, and the court of appeals affirmed.  *State v. Smith*, 425 S.C. 20, 819 S.E.2d 187 (Ct. App. 2018).  This Court granted Smith's petition for a writ of certiorari to review the decision of the court of appeals.

## LAW/ANALYSIS

There were multiple errors in the trial below that require reversal of the attempted murder conviction.  First, as a majority of states have found, felony attempted-murder is not a recognized crime.  *Cf. State v. Sanders*, 827 S.E.2d 214, 219–22 & n.9 (W. Va. 2019) (collecting an extensive list of cases, all of which note the "logical absurdity" of recognizing the crime of felony attempted-murder).  As a result, the trial court's instruction to the jury regarding the requirements and consequences of felony attempted-murder was erroneous.

Additionally, the State argued the felony attempted-murder charge was permissible because it was merely "another way to infer malice."  In claiming self-defense, *Smith admitted he had an express intent to kill*, but argued his intent to kill was legally justified due to an imminent threat to his life from the rival group.  Thus,

there was no need for the jury to infer his malice from the circumstances surrounding the shooting. Rather, the jury was faced with the choice of either believing Smith's story and finding he acted in self-defense, or believing Smith had a self-admitted intent to kill that was *not* legally justified—the very definition of express malice. *See, e.g.*, *State v. King*, 422 S.C. 47, 57, 810 S.E.2d 18, 23 (2017) (defining express malice as the deliberate intention to unlawfully kill another (quoting *Keys v. State*, 766 P.2d 270, 273 (Nev. 1988))). In either case, an implied malice charge was wholly unnecessary to the jury's decision. *Cf. id.* at 64 n.5, 810 S.E.2d at 27 n.5 (asking the General Assembly to re-evaluate the language in section 16-3-29 of the South Carolina Code (2015) that the malice aforethought necessary for attempted murder could be "expressed or implied," "as the inclusion of the word 'implied' in section 16-3-29 is arguably inconsistent with a specific-intent crime. *See Keys*[, 766 P.2d at 273] (stating, '[o]ne cannot *attempt* to kill another with implied malice because there is no such criminal offense as an attempt to achieve an unintended result' . . .)."); *see also Wilds*, 355 S.C. at 276–77, 584 S.E.2d at 142 (explaining malice need be implied only if there is no positive evidence of express malice). The State's unrelenting quest to obtain an implied malice charge is troubling.

Of course, erroneous jury instructions are subject to a harmless error analysis. *See Burdette*, 427 S.C. at 496, 832 S.E.2d at 578 (citation omitted). Here, however, the felony attempted-murder charge cannot be considered harmless. During his opening statement, Smith twice conceded guilt to the two felon-in-possession charges. By requesting the felony attempted-murder charge after Smith had already conceded guilt to the predicate felonies, the State essentially eliminated its own burden to prove all of the elements of attempted murder beyond a reasonable doubt, specifically that Smith acted with malice aforethought. For a constitutional error of this magnitude, "We need go no further than saying we cannot conclude the error was harmless beyond a reasonable doubt." *Belcher*, 385 S.C. at 611, 685 S.E.2d at 809 ("[W]e are firmly convinced that instructing a jury that 'malice may be inferred by the use of a deadly weapon' is confusing and prejudicial where evidence is presented that would reduce, mitigate, excuse or justify the homicide. A jury charge is no place for purposeful ambiguity.").

## CONCLUSION

In accordance with the majority approach, we hold that felony attempted-murder is not a recognized crime in South Carolina. Likewise, we hold an implied malice charge should not be given if there has been evidence presented that the defendant acted in self-defense. Accordingly, we reverse Smith's convictions for attempted

murder and the possession of a firearm during the commission of a violent crime and remand for a new trial.[9]

---

[9] Smith also contends the court of appeals erred in finding the doctrine of transferred intent applied to attempted murder because it is a specific-intent crime. In particular, Smith argues the requisite specific intent necessary to support an attempted murder conviction must be the specific intent to kill *a specific person*. Smith points out the "State elected to prosecute [him] for the attempted murder of [the victim] instead of the attempted murder of [the men in the rival group]," and he "was not tried (nor has ever been tried) for any crime related to [the rival group]." We need not address this issue because the prior issues are dispositive. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999). Nonetheless, we note the State indicated that—were the Court to reverse Smith's convictions—it intended to charge Smith with three counts of attempted murder for shooting at the rival group, and one count of assault and battery of a high and aggravated nature (ABHAN) for shooting the victim. ABHAN is a general-intent crime, and, thus, there would be no question on remand as to the applicability of the doctrine of transferred intent. *See State v. Williams*, 427 S.C. 148, 157, 829 S.E.2d 702, 707 (2019) ("It is well-settled in South Carolina that the doctrine of transferred intent applies to general-intent crimes.").

Finally, while not necessary to the disposition of this appeal, we note our concern with the scope of the medical testimony elicited by the State and admitted by the trial court at Smith's trial. To be sure, the facts of this case are tragic and heartbreaking. That reality would be evident even if the State had not sought to improperly appeal to the emotions of the jury. Here, for example, the State called a witness to testify about the possibility that the victim may suffer future injuries due to the shooting. That witness testified in detail about things such as the victim's future bathroom habits; the difficulty she will have doing everyday tasks (such as climbing in and out of bed); the possibility she will suffer from recurrent urinary tract infections, sepsis, and osteoporosis; and other similar issues that may affect her future health. Upon Smith's objection to the relevance of this testimony, the State justified it to the trial court by claiming: (1) "the fact that [the victim] could have recurrent infections, that this injury could still cost her her life [was important]"; and (2) "when we -- the State of South Carolina, when we accuse someone of attempted murder, *we have to prove the injuries*." (Emphasis added.) We note the attempted murder statute does not require an injury to the victim at all, much less for future *possible* injuries to be described in such graphic detail. *See*

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**

---

S.C. Code Ann. § 16-3-29 ("A person who, with intent to kill, attempts to kill another person with malice aforethought, either expressed or implied, commits the offense of attempted murder."); *Williams*, 427 S.C. at 154, 158, 829 S.E.2d at 705, 707 (affirming three attempted murder convictions in a case in which the defendant shot at three people repeatedly, injuring none of them). The gross prosecutorial overreach manifested here further supports our decision not to rely on harmless error to rescue this conviction.